Renee M. Finch
Nevada State Bar 13118
**MESSNER REEVES LLP**
8945 W. Russell Road, Suite 300
Las Vegas, Nevada 89148
Phone: (702) 363-5100
Email: *rfinch@messner.com*
*Attorneys for Plaintiff*, Circus Circus, LV, LP

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CIRCUS CIRCUS LV, LP, <br><br> *Plaintiff*, <br><br> v. <br><br> AIG Specialty Insurance Company, <br><br> *Defendant*. | CASE NO. |

**COMPLAINT**

Plaintiff, Circus Circus, LV, LP ("Circus Circus"), files this Complaint for damages and declaratory judgment against Defendant, AIG Specialty Insurance Company ("AIG"), alleging the following:

**I.   INTRODUCTION**

1. This diversity action for breach of contract and declaratory judgment arises out of Circus Circus's claim of insurance coverage under an "all risks" insurance policy sold by AIG to Circus Circus.

2. Despite agreeing to cover Circus Circus for all risks of physical loss or damage property resulting from perils not specifically excluded, and Circus Circus's resulting loss of business income and extra expense, AIG refuses to stand by the insurance policy that it wrote and sold and honor its contractual undertakings. Instead, AIG relies on sleight-of-hand, distortions of fact and contortions of

{04246510 / 1}1

law to escape from Circus Circus's covered claim. But no illusion or death-defying feat can alter the plain language of AIG's policy and the broad all risks coverage that it provides.

## II. THE PARTIES

3. Plaintiff Circus Circus LV, LP is a limited partnership organized under the laws of the State of Nevada, with its principal place of business at 2880 Las Vegas Boulevard South, Las Vegas, NV 89109.

4. Defendant AIG Specialty Insurance Company is an Illinois insurance company, with its principal place of business located in the State of New York.

5. AIG is authorized to do business and issue insurance policies in the State of Nevada.

## III. JURISDICTION & VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7. Venue is proper in this District under 28 U.S.C. § 1391 because Circus Circus's principal place of business is in this District and a substantial portion of the events and omissions giving rise to the claims and losses that occurred within the District.

## IV. FACTUAL BACKGROUND

8. Circus Circus is a sprawling 2.8 million square foot casino complex situated on over 70 acres of land with a physical address of 2880 Las Vegas Boulevard South, Las Vegas, Nevada. It has over 1,100 gaming attractions, nearly 3,800 rooms, and employs more than 2,200 individuals. The number of guests that Circus Circus welcomes onto its property is staggering—over 5,800 people per day.

9. AIG is an insurance company that sold an "all risks" insurance policy to Circus Circus providing coverage to Circus Circus against "all risks of direct physical loss or damage to Insured Property [i.e., the entire casino complex] from a **Covered Cause of Loss**."[1] (See Policy No. 018257119, attached as Exhibit A, at CCPOLICY_0018 (the "Policy").)

---

[1] Terms defined in the Policy are signified by the use of **bold** typeface. Unless otherwise stated, the use of **bold** typeface signifies the use of same in the Policy.

{04246510 / 1}2

10. As used in the Policy's insuring agreement, the term "physical loss" is separate, distinct and has an independent meaning from the term "damage."

11. In the Policy, the term "**Covered Cause of Loss**" is defined as "peril or other type of loss, not otherwise excluded under this policy." Exhibit A, at CCPOLICY_0042.

12. The term "peril" is not defined in the Policy.

13. The phrase "other type of loss" is not defined in the Policy.

14. The Policy also covers Circus Circus's business interruption losses that result from a **Covered Cause of Loss** (i.e., a "peril or other type of loss"). Exhibit A, at CCPOLICY_0025.

15. The Policy provides up to $500 million in coverage for physical loss or damage of property and up to $96,774,307 in coverage for loss of business income. Exhibit A, at CCPOLICY_0001, CCPOLICY_0061.

16. The Policy has an effective term of December 20, 2019 through December 20, 2020.

17. In exchange for AIG's agreement to take on Circus Circus's risk of loss, AIG charged Circus Circus a $1.6 million premium.

18. Circus Circus has satisfied all conditions precedent to coverage under the Policy including the payment of all premiums.

A. **COVID-19 is a Deadly Communicable Disease**

19. COVID-19 is a deadly communicable disease that has already infected over 2.6 million people in the United States and caused more than 127,000 deaths.[2]

20. The CDC estimates that infection rates for COVID-19 are likely at least ten times higher than reported.[3]

21. There is no publicly available vaccine for COVID-19.

22. The World Health Organization ("WHO") has declared the COVID-19 outbreak a pandemic, and President Trump has declared a nationwide emergency due to the public health emergency caused by the COVID-19 outbreak in the United States.

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last viewed July 1, 2020).

[3] See https://www.nbcnews.com/health/health-news/cdc-says-covid-19-cases-u-s-may-be-10-n1232134 (last viewed July 1, 2020).

{04246510 / 1}3

23. The incubation period for COVID-19—the time between exposure and symptom onset—can be up to 14 days.[4]

24. During this pre-symptomatic period, infected persons can be contagious and disease transmission can occur before the infected person shows any symptoms or has any reason to believe they are infected.[5]

25. Not only is COVID-19 spread by human-to-human transfer, but the WHO has confirmed that COVID-19 can exist on contaminated objects or surfaces.[6]

26. According to a study documented in *The New England Journal of Medicine*, COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to three days on plastic and stainless steel.[7]

27. All of these materials are used by Circus Circus throughout its facilities and operations.

28. The study's results suggest that individuals could become infected with COVID-19 through indirect contact with surfaces or objects used by an infected person, whether they were symptomatic or not.[8]

**B.  Orders Because of COVID-19, Physical Loss of Property, and Physical Damage to Property**

29. In an effort to slow the spread of COVID-19 and as a direct result of a **Covered Cause of Loss** to property located within 1 mile of Circus Circus, federal, state and local governments imposed unprecedented directives, referred to as "Stay at Home Orders," prohibiting travel into the

---

[4] See *https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19.pdf?sfvrsn=5ae25bc7_2* (last viewed July 1, 2020).

[5] See *https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19.pdf?sfvrsn=5ae25bc7_2* ("In a small number of case reports and studies, pre-symptomatic transmission has been documented through contact tracing efforts and enhanced investigation of clusters of confirmed cases. This is supported by data suggesting that some people can test positive for COVID-19 from 1-3 days before they develop symptoms. Thus, it is possible that people infected with COVID-19 could transmit the virus before significant symptoms develop.") (last viewed July 1, 2020).

[6] See *https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations* ("[T]ransmission of the COVID-19 virus can occur by direct contact with infected people and indirect contact with surfaces in the immediate environment or with objects used on the infected person") (last viewed July 1, 2020).

[7] See *https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces* (last viewed July 1, 2020); see also *https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations* (last viewed July 1, 2020).

[8] Id.

{04246510 / 1}4

United States, requiring certain businesses to close and requiring residents to remain in their homes unless performing "essential" activities.

30. The Stay at Home Orders required businesses deemed "non-essential" to be closed. In-person work was not permitted.

31. The Stay at Home Orders also severely affected businesses classified as "essential."

32. The Stay at Home Orders have caused and are continuing to cause a total or partial prohibition of access to Circus Circus.

33. The Stay at Home Orders have caused and are continuing to cause the necessary partial or total interruption of Circus Circus's business operations.

34. Although some have recently been relaxed, Stay at Home Orders remain in effect as of the date of filing and have caused and continue to cause a total or partial prohibition of access to Circus Circus and the necessary partial or total interruption of Circus Circus's business operations.

35. As a business that relies on materials and customers from right next door to across the country to around the world, Circus Circus is subject to these various Stay at Home Orders.

36. The physical loss and damage caused by COVID-19 and the threat of further physical loss or damage caused by COVID-19 has had a devastating effect on Circus Circus's business.

37. Likewise, the Stay at Home Orders and the physical loss of Insured Property caused by those Orders has had a devastating effect on Circus Circus's business.

38. On March 12, 2020, Nevada Governor Steve Sisolak declared a state of emergency in the state of Nevada citing the presence of COVID-19 and its impact on lives and property. (See NV Exec. Decl. of Emergency, dated March 12, 2020, http://gov.nv.gov/News/Emergency_Orders/2020/2020-03-12_-_COVID-19_Declaration_of_Emergency/, attached as Exhibit B).

39. Five days later, pursuant to his March 12, 2020, Declaration, Governor Sisolak further ordered all gaming activities in the state to close at midnight on March 17, 2020. (See NV Exec. Emergency Order, dated March 17, 2020, http://gov.nv.gov/uploadedFiles/govnewnvgov/Content/News/Emergency_Orders/2020_attachments/2020-03-17-NV-Health-Reponse-COVID19-Risk-Management-Initiative-2.pdf, attached as Exhibit C).

{04246510 / 1}5

40. As a direct result of COVID-19 and these Orders, Circus Circus closed its doors at 12:01 AM on March 18, 2020.

41. Persons infected with COVID-19 were present at Circus Circus prior to March 18, 2020.

42. In fact, during the period January 1, 2020, to March 18, 2020, Circus Circus employees recorded more than 1,600 sick days. During that same period, Circus Circus had more than 337,000 registered guests from all over the world.

43. On March 20, 2020, Governor Sisolak, again noting the need to protect property and persons, ordered all non-essential businesses to close and restricted the activities of essential businesses. (See NV Exec. Emergency Decl., Directive No. 3, dated March 20, 2020, http://gov.nv.gov/News/Emergency_Orders/2020/2020-03-20_-_COVID-19_Declaration_of_Emergency_Directive_003_(Attachments)/; and related regulations, http://gov.nv.gov/uploadedFiles/govnewnvgov/Content/News/Emergency_Orders/2020_attachments/2020-03-20_COVID-19_DPS_DEM_EmergencyRegulations.pdf, attached as Exhibit D).

44. On April 29, 2020, Governor Sisolak issued a Directive explaining, among other things, the basis for the closure and Stay at Home Orders stating specifically that the ability of COVID-19 "to survive on surfaces for indeterminate periods of time renders some property unusable and contributes to contamination, damage, and property loss …." (See NV Exec. Emergency Decl. Directive No. 16, dated April 29, 2020, http://gov.nv.gov/News/Emergency_Orders/2020/2020-04-29_-_COVID-19_Declaration_of_Emergency_Directive_016_(Attachments)/, attached as Exhibit E).

### C. Circus Circus Notifies AIG of a Covered Claim

45. On March 20, 2020, Circus Circus notified AIG that it had experienced, and was continuing to experience, a covered loss as a consequence of the physical loss and damage caused by COVID-19 and the resulting Stay at Home Orders and other civil authority orders.

46. On June 19, 2020, AIG sent Circus Circus a written denial of its claim setting forth the reasons that AIG is refusing to pay the claim.

{04246510 / 1} 6

**D.     The "All Risks" Coverage Is Triggered**

47.     The "All Risks" Coverage AIG sold to Circus Circus provides that "[s]ubject to all of the terms and conditions of this **Policy**, [AIG] insures [Circus Circus] against all risks of direct physical loss or damage to Insured Property from a **Covered Cause of Loss**." Exhibit A, at CCPOLICY_0018.

48.     The Policy defines **Covered Cause of Loss** as "a peril or other type of loss, not otherwise excluded under this **Policy.**" Exhibit A, at CCPOLICY_0042.

49.     COVID-19, a highly contagious disease for which there is no known vaccine, is a peril not excluded under the **Policy**.

50.     COVID-19, therefore, is a **Covered Cause of Loss**.

51.     The Stay at Home Orders are a peril or other type of loss not excluded under the **Policy**.

52.     The Stay at Home Orders, therefore, are **Covered Causes of Loss.**

53.     Circus Circus experienced "direct physical loss" of its property from one or more **Covered Causes of Loss** commencing at midnight on March 17, 2020, and continuing to the present.

54.     Circus Circus also experienced direct "physical damage" to its property because of COVID-19.  COVID-19 causes physical damage to property because it contaminates objects and surfaces as described above.

55.     Circus Circus, therefore, experienced direct "physical damage" to its property from a **Covered Cause of Loss** commencing on or about March 17, 2020, and continuing to the present.

**E.     The Policy's Business Interruption Coverage (a.k.a. Time Element Coverage)**

56.     AIG Policy also covers the "actual loss of income sustained by the Insured during the necessary partial or total interruption of the Insured's business operations … directly resulting from a Covered Cause of Loss …." Exhibit A, at CCPOLICY_0025.

57.     The Policy states that, "[i]n the event the Insured is prevented … from continuing its business operations or services and is unable … [t]o continue business operations or services … then [AIG] shall be liable … for the actual loss of income sustained during the Period of Interruption." Exhibit A, at CCPOLICY_0025.

58. Circus Circus's business operations have been interrupted since March 18, 2020, as a direct result of covered "peril or other type of loss."

59. The partial or total interruption of Circus Circus's business operations remains ongoing.

60. Circus Circus has sustained and will continue to sustain loss of business income, incur extra expense and sustain other insured losses as a result of the partial or total interruption of its business.

**F.    The Policy's "Additional" Coverages**

61. In addition, AIG's Policy provides certain other coverages that are implicated, including, but not limited to, the following:

*i.    Contingent Time Element coverage*

62. The AIG policy covers Contingent Time Element, which is defined as the "direct physical loss or damage to property … of a direct supplier or direct customer … by a **Covered Cause of Loss**, and such loss or damage [w]holly or partially prevents any direct supplier from supplying their goods and/or services; or, wholly or partially prevents any direct customer from accepting the Insured's goods and/or services."  Exhibit A, at CCPOLICY_0027.

63. Circus Circus's direct suppliers and customers have experienced direct physical loss and/or damage  to their to their property from a covered "peril or other type of loss."

64. The direct physical loss or damage to property of Circus Circus's direct customers and suppliers has prevented the suppliers from suppling their goods and services to Circus Circus and the customers from accepting Circus Circus's goods and services.

65. Circus Circus has sustained and will continue to sustain loss of business income, incur extra expense and sustain other insured losses resulting from Circus Circus's direct suppliers' and customers' inability to supply their goods and services and accept Circus Circus's goods and services, respectively.

66. These losses are covered under the Policy's Contingent Time Element coverage.

### ii. Extra Expense coverage

67. The AIG Policy covers Extra Expense, which is defined as the extra costs "incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business … resulting from direct physical loss or damage by a **Covered Cause of Loss**." Exhibit A, at CCPOLICY_0028.

68. Circus Circus has incurred extra cost to maintain its business as a result of the physical loss and/or physical damage from a covered "peril or other type of loss."

69. These reasonable and necessary extra costs incurred by Circus Circus are covered under the Policy's Extra Expense coverage.

### iii. Ingress & Egress coverage

70. The AIG policy covers Ingress and Egress, which is defined by the Policy as "loss of income and Extra Expense … when partial or total physical ingress to or egress from the Insured's … property is prohibited as a direct result of a Covered Cause of Loss to the property of others within [1 mile]." Exhibit A, at CCPOLICY_0028, CCPOLICY_0006.

71. Circus Circus lost business income and incurred extra cost because of restricted access to its property that is a direct result of a covered "peril or other type of loss" at properties and businesses within 1 mile.

72. This loss of business income and extra cost sustained by Circus Circus is covered under the Policy's Ingress & Egress coverage.

### iv. Civil Authority coverage

73. The AIG Policy covers the actual loss of income and extra expense sustained because of an Interruption by Civil or Military Authority, which is defined by the Policy as "loss of income and Extra Expense sustained during the period of time when an order of civil … authority prohibits total or partial access to the Insured's … property, provided such orders are the direct result of a Covered Cause of Loss to the property of others and [within 1 mile]." CCPOLICY_0028, CCPOLICY_0006.

74. Circus Circus has lost business income and incurred extra cost because of government orders that prohibit access to the casino complex which are the direct result of a covered "peril or other type of loss" within 1 mile of the insured location.

75. This loss of income and extra cost sustained by Circus Circus is covered under the Policy's Civil Authority coverage.

### G. No Exclusion Applies

76. No exclusion in the Policy applies to Circus Circus's claim. To the extent AIG contends any exclusion(s) apply, such exclusion(s) are ambiguous and/or unenforceable.

77. The Policy's exclusion for **Pollutants or Contaminants** states:

> Except as otherwise provided under the Additional Coverages and Additional Time Element Coverages (and in such event, only to the extent provided therein), the Company does not insure for loss or damage caused directly or indirectly by any of the following perils. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:
>
> \*       \*       \*
>
> f.  The actual, alleged or threatened release, discharge, escape or dispersal of **Pollutants or Contaminants**, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any **Covered Cause of Loss** under this **Policy**.

Exhibit A, at CCPOLICY_0018-19.

78. Exclusion f does not apply to Circus Circus's claimed loss.

79. Among other things, exclusion f requires a "release, discharge, escape or dispersal of Pollutants or Contaminants."

80. COVID-19 was not "release[d], discharge[d], escape[d] or disperse[d]."

81. COVID-19 is a global pandemic of unknown origin.

82. Nor is COVID-19 a **Pollutant or Contaminant** as that term is defined by the Policy.

83. **Pollutants or Contaminants** is defined as:

> any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances listed in applicable environmental state, federal or foreign law or regulation, or as designated by the U.S. Environmental Protection Agency or similar applicable state or foreign governmental authority ….

{04246510 / 1} 10

Exhibit A, at CCPOLICY_0048.

84. Unlike **Pollutants or Contaminants**, as that term is defined in the Policy, as alleged, COVID-19 is a communicable disease for which there is no known vaccine.

85. The definition of **Pollutants or Contaminants** does not include communicable disease.

86. However, AIG certainly could have added an exclusion to the Policy for loss caused by or resulting from communicable disease.

87. AIG likewise could have added an exclusion to the Policy for loss caused by or resulting from pandemic.

88. Indeed, exclusions for both communicable disease and pandemic were in use in the insurance industry when AIG sold the Policy to Circus Circus.

**H.     Circus Circus's Claim**

89. Having sustained loss covered under the Policy, Circus Circus submitted a claim to AIG. AIG has wrongfully failed to accept coverage for the claim.

90. AIG's failure to accept coverage for Circus Circus's claim is based on AIG's failure to faithfully apply its own Policy language.

91. AIG's wrongful denial of coverage has caused Circus Circus to suffer and continue to suffer significant damages.

## COUNT I

### Declaratory Judgment

92. Circus Circus repeats and realleges the allegations in the preceding paragraphs.

93. Circus Circus seeks a declaration of the parties' rights and duties under the Policy pursuant to 28 U.S.C. § 2201. A justiciable controversy exists between Circus Circus and AIG concerning the availability of coverage under the Policy for Circus Circus's claim.

94. The controversy between Circus Circus and AIG is ripe for judicial review.

95. Nevada has adopted the Uniform Declaratory Judgment Act for purposes of declaring parties' right in this precise circumstance.

96. Accordingly, Circus Circus seeks a declaration from the Court that:

   a. The various coverage provisions identified herein are triggered by Circus Circus's claim;

   b. No Policy exclusion applies to bar or limit coverage for Circus Circus's claim; and

   c. The Policy covers Circus Circus's claim.

## COUNT II

Breach of Contract
(Property Loss and Damage)

97. Circus Circus repeats and realleges the allegations in the preceding paragraphs.

98. The Policy is a valid and enforceable contract between Circus Circus and AIG.

99. In the Policy, AIG agreed to cover property against all risks of physical loss or damage from a peril or other type of loss not otherwise excluded.

100. COVID-19 and the resulting governmental orders are a peril or other type of loss as that phrase is used in the Policy.

101. COVID-19 and the government orders have caused and are continuing to cause physical loss and/or damage to Circus Circus's property.

102. No exclusions apply to bar coverage.

103. Circus Circus is entitled to coverage for the losses it has sustained because of physical loss and/or damage up to the Policy's $500 million limit of liability or any applicable sublimits.

104. Circus Circus complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

105. Nonetheless, AIG unjustifiably refuses to pay for Circus Circus's claim in breach the Policy.

106. Circus Circus has suffered and continues to suffer damages because of AIG's breach of the Policy.

107. Circus Circus is entitled to damages because of AIG's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

{04246510 / 1} 12

# COUNT III

### Breach of Contract
### (Time Element Coverage)

108. Circus Circus repeats and realleges the allegations in the preceding paragraphs.

109. The Policy is a valid and enforceable contract between Circus Circus and AIG.

110. In the Policy, AIG agreed to cover Circus Circus's loss of income and extra expense sustained during the interruption of its business operations directly resulting from a peril or other type of loss not otherwise excluded, as provided in the Time Element Coverage section.

111. COVID-19 and the resulting governmental orders are a peril or other type of loss as that phrase is used in the Policy.

112. Circus Circus has sustained and will continue to sustain loss of income and extra expenses due to the necessary interruption of its business operations as a direct result of COVID-19 at its property and the government orders impacting its property.

113. As well, COVID-19 poses a serious or immediate danger to its property.

114. No exclusions apply to bar coverage.

115. Circus Circus is entitled to coverage for the loss of income and extra expenses sustained up to the Policy's $96,774,307 limit of liability or any applicable sublimits.

116. Circus Circus complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

117. Nonetheless, AIG unjustifiably refuses to pay for these losses and expenses in breach the Policy.

118. Circus Circus has suffered and continues to suffer damages because of AIG's breach of the Policy.

119. Circus Circus is entitled to damages because of AIG's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT IV

### Breach of Contract
### (Additional Time Element Coverages)

120. Circus Circus repeats and realleges the allegations in the preceding paragraphs.

121. The Policy is a valid and enforceable contract between Circus Circus and AIG.

122. In the Policy, AIG agreed to afford coverage for the loss of income and extra expense sustained by Circus Circus as provided in the Policy's Additional Time Element Coverages section.

123. COVID-19 and the resulting governmental orders are a peril or other type of loss as that phrase is used in the Policy.

124. COVID-19 and the government orders have caused and, upon information and belief, are continuing to cause physical loss and/or damage to the property of others that has caused Circus Circus to sustain loss of income and extra expense that is covered under the Policy's Additional Time Element Coverages section.

125. No exclusions apply to bar coverage.

126. Circus Circus is entitled to coverage for the loss of income and extra expense sustained up to each applicable limit of liability or any applicable sublimits.

127. Circus Circus complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

128. Nonetheless, AIG unjustifiably refuses to pay for these losses and expenses in breach the Policy.

129. Circus Circus has suffered and continues to suffer damages because of AIG's breach of the Policy.

130. Circus Circus is entitled to damages because of AIG's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## PRAYER FOR RELIEF

**Wherefore**, Circus Circus prays for judgment against AIG as follows:

1) A declaration from the Court that:

    a. The various coverage provisions identified herein are triggered by Circus Circus's claim;

    b. No Policy exclusion applies to bar or limit coverage for Circus Circus's claim; and

    c. The Policy covers Circus Circus's claim.

2) For special and consequential damages against AIG in an amount in to be proved at trial in excess of $75,000.00;

3) Pre and Post-judgment interest as provided by law;

4) An award of attorney's fees and costs of suit incurred; and

5) For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Circus Circus demands trial by jury on all issues so triable.

Date: July 2, 2020

Respectfully submitted,
PLAINTIFF CIRCUS CIRCUS LV, LP
By and through its attorneys,

*/s/ Renee M. Finch*
Renee M. Finch
Nevada State Bar 13118
MESSNER REEVES LLP
8945 W. Russell Road, Suite 300
Las Vegas, NV 89148
Phone: (702) 363-5100
Email: *rfinch@messner.com*

Michael S. Levine (*pro hac vice* forthcoming)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
Phone: (202) 955-1500
Email: *mlevine@hunton.com*

{04246510 / 1} 15

Kevin V. Small (*pro hac vice* forthcoming)
HUNTON ANDREWS KURTH LLP
200 Park Ave, 52 Fl.
New York, NY 10166
Phone: (212) 309-1226
Email: *ksmall@hunton.com*

Harry L. Manion, III (*pro hac vice* forthcoming)
Christopher Cunio (*pro hac vice* forthcoming)
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Phone: (617) 648-2800
Fax: (617) 433-5022
Email: *hmanion@hunton.com*
Email: *ccunio@hunton.com*