KRISTEN T. GALLAGHER (NSBN 9561)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
kgallagher@mcdonaldcarano.com

KEITH MOSKOWITZ
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone: (312) 876-8000
keith.moskowitz@dentons.com
(*pro hac vice to be submitted in 14 days*)

ERIN E. BRADHAM
DENTONS US LLP
2398 East Camelback Road, Suite 850
Phoenix, Arizona 85016
Telephone: (602) 508-3900
erin.bradham@dentons.com
(*pro hac vice to be submitted in 14 days*)

*Attorneys for AIG Specialty Insurance Co.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Circus Circus LV, LP., Plaintiff, v. AIG Specialty Insurance Company, Defendant. | Case 2:20-cv-01240-JAD-NJK<br><br>**DEFENDANT AIG SPECIALTY INS. CO.'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

Under Fed. R. Civ. P. 12(b)(6) and LR 7-2, AIG Specialty Ins. Co. ("AIG") moves to dismiss this case because Plaintiff Circus Circus LV, LP ("Circus Circus") fails to state a claim on which relief may be granted.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

AIG's Commercial Property Policy (the "Policy") does not cover Circus Circus's purely financial losses from the COVID-19 pandemic caused by governmental orders issued to create

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

social distancing and mitigate the spread of the virus. That Policy *only* insures against "direct physical loss or damage to" property; it does not provide coverage for purely economic losses in the absence of any physical casualty to property.

Circus Circus has not alleged any specific, non-conclusory facts to support that it suffered "direct physical loss or damage to" property, or that its claimed business interruption losses were caused by such damage. Rather, Circus Circus alleges that its losses were caused by general, prophylactic government orders issued in response to the pandemic to slow the spread of the virus.

Moreover, even if Circus Circus's allegations could somehow support a claim for losses caused by direct physical loss or damage to property, the Policy expressly excludes any loss or damage caused by health-harming contaminants, specifically including "virus[es]." This exclusion applies regardless of whether the loss is also caused "in whole or in part" by a covered loss. The COVID-19 virus harms human health, just as Circus Circus alleges. And Circus Circus's argument that COVID-19 is not "released" or "dispersed" relies on an inappropriately constrained reading of those terms and is directly contrary to its allegations in its own Complaint about how COVID-19 spreads.

In fact, to date, five courts that have addressed similar claims for COVID-19-related losses are in agreement: property insurance policies like the one at issue in this case do not cover such losses. (Ex. 1, *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-cv-461-DAE (W.D. Tex. Aug. 13, 2020; Ex. 2, *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1, (May 14, 2020 transcript); Exs. 4-5, *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct.) (July 1, 2020 transcript and July 21 order); Ex. 6, *Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B (D.C. Sup. Ct. Aug. 6, 2020), Exs. 14-15, *The Inns by the Sea v. Cal. Mutual Ins. Co.*, No. 20cv001274 (Cal. Sup. Ct. Aug. 6, 2020) (order and complaint).) The only case AIG is aware of where a court issued an order denying a motion to dismiss in a case seeking coverage for COVID-related losses under a property insurance policy is *Studio 417, Inc. v. The Cincinnati Insurance Co.*, No. 20-cv-03127-SRB (W.D. Mo. Aug. 12, 2020), attached as Ex. 7. But as explained below, that case is

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

distinguishable and wrongly decided. Of particular note, the policy in *Studio 417* contained no exclusion for viruses, whereas the Policy at issue here has such an exclusion.

Thus, Circus Circus's Complaint does not allege a required direct physical loss or damage to property that caused a business interruption and, even if it did, Circus Circus's alleged loss falls squarely within the Policy's virus exclusion. For either reason this Court should dismiss the Complaint with prejudice.

## FACTUAL BACKGROUND

### A. The Nevada Governor Ordered Circus Circus to Cease Gaming Operations as a Prophylactic Measure to Prevent the Spread of the Virus.

Circus Circus alleges that it incurred financial losses when, in response to the Nevada Governor's emergency orders related to COVID-19, it ceased at least some operations on its 2.8 million square-foot casino/hotel complex. (*See* Compl. ¶¶ 8, 33-34, 38-40.) Specifically, Circus Circus points to the Governor's March 17, 2020 verbal order that required casino gaming activity to temporarily cease as of March 17, 2020 at 11:59 p.m., and alleges that it "closed its doors at 12:01 AM on March 18, 2020." (*See* Compl. ¶¶ 39, 40; Ex. 9, Decl. of Emergency Directive 002.)[1] That order was issued to prevent certain activities that "result in the congregation of persons for extended periods of time" and that "promulgate[] the spread of COVID-19." (Ex. 9, Decl. of Emergency Directive 002 (further noting the "correlation between density of persons gathered and the risk of transmission of COVID-19"); *see also* Compl. Ex. E ("the propensity of the COVID-19 disease to spread via interpersonal contact precipitated the widespread closure of certain businesses and the imposition of limitations on other businesses.").) The Complaint cites

---

[1] Circus Circus discussed this March 17, 2020 order in paragraph 39 of its Complaint but erroneously attached as the supporting Exhibit C a Nevada Health Response COVID-19 Risk Mitigation Initiative, which by its terms expressly states that it is "guidance" and not an Executive Order. (*See* Compl. ¶ 39 & Ex. C.) However, the Court can properly consider the correct Executive Order, as well as all the other Nevada Executive Orders related to COVID-19, because Circus Circus incorporates the orders into its complaint, the orders form the basis for its claim, and the orders are accurately and readily determined from sources that cannot reasonably be questioned. *E.g.*, Fed. R. Evid. 201; *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.") (citation omitted).

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

a number of other Nevada Governor emergency orders but does not allege whether or how those orders impacted its operations. (*See* Compl. ¶¶ 43-44.) Those orders also were issued to address the spread of the disease. (*Id.* at Ex. B (ordering the state the coordinate its response to "prevent the further transmission of[] COVID-19 to persons in this state"); *Id.* at Ex. C ("The goal of this Initiative is to protect the health and safety of Nevadans by preventing people coming together unnecessarily, where people who have the infection can easily spread it to others."); *Id.* at Ex. D (ordering closed businesses "that promote recreational social gathering activities" "to combat COVID-19").)

Based on those allegations, Circus Circus seeks a declaratory judgment and brings breach of contract claims arguing that its Commercial Property Policy covers its alleged purely financial losses. Circus Circus alleges that its losses are covered under the "all risks of physical loss or damage" portion of the policy, as well as under the Time Element and Additional Time Element provisions. (Compl. ¶¶ 97-130.) Circus Circus further alleges that its losses are not barred by the exclusion for damages caused by health-harming contaminants, specifically including viruses.

**B. The Policy Covers "Direct Physical Loss or Damage to" Property.**

The Commercial Property Policy at issue covers "all risks of ***direct physical loss or damage to*** Insured Property from a **Covered Cause of Loss**." (Compl. Ex. A, CCPolicy_0018 (first emphasis added; second emphasis in original).)[2] Specifically, the Policy provides:

**SECTION I - COVERED CAUSES OF LOSS**

> A. INSURING AGREEMENT: Subject to all of the terms and conditions of this **Policy**, the Company insures against all risks of ***direct physical loss or damage*** to Insured Property from a **Covered Cause of Loss**.

(*Id.* (bold italics added; bold in original).) Covered Cause of Loss is defined as "a peril or other type of loss, not otherwise excluded under this Policy." (*Id.* at CCPolicy_0042.)

[2] A copy of the Policy is attached as Exhibit A to Plaintiff's Complaint, and is therefore properly considered by the Court in deciding this Motion. *Ritchie*, 342 F.3d at 908 (court may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment").

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

The Policy also covers an insured's lost income when the insured's business operations are interrupted by direct physical loss or damage covered under the Policy. The coverage is limited to the "Period of Interruption," which begins from the time of "direct physical loss or damage" and ends when "[p]hysically damaged buildings and equipment could be repaired or replaced" or when operations resume, whichever is earlier. (*Id.* at CCPolicy_0025-26.) The Policy's Time Element provision states:

> This Policy covers actual loss of income sustained by the Insured during the necessary partial or total interruption of the Insured's business operations, services or production ***during the Period of Interruption*** directly resulting from a Covered Cause of Loss to Insured Property at an Insured Location.
>
> A. ACTUAL LOSS OF INCOME SUSTAINED: In the event the Insured is prevented from … continuing its business operations or services and is unable . . . [t]o continue business operations or services through [certain alternate means] . . . then the Company shall be liable, subject to all other conditions of this **Policy** not inconsistent herewith, for the actual loss of income sustained ***during the Period of Interruption***.
>
> …
>
> In determining the amount payable under this coverage, the Period of Interruption shall be:
>
> The period ***from the time of direct physical loss or damage*** from a **Covered Cause of Loss** to Insured Property to the time when, with the exercise of due diligence and dispatch, either:
>
> 1. Normal operations resume; or
>
> 2. Physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage;
>
> Whichever is less.

(*Id.* (bold italics added; bold in original).) The Time Element provision would apply, for example, where a fire caused physical loss or damage to a hotel that prohibited operations until repairs were made.

The Policy also includes certain Additional Time Element provisions. Notably, all of the Additional Time Element provisions are "subject to the terms and conditions of [the] Policy, including but not limited to, any conditions set forth in this TIME ELEMENT COVERAGE Section." (*Id.* at CCPolicy_0027-28.) Thus, they are subject to the "direct physical loss or

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

damage" requirement applicable to Covered Causes of Loss under Section I – Covered Causes of Loss.

Within the Additional Time Element coverages, Circus Circus alleges coverage under the Contingent Time Element, Extra Expense, Ingress & Egress, and Civil Authority provisions. (Compl. ¶¶ 61-75.) Taking each in order, the Contingent Time Element provision covers lost income and extra expenses when a supplier or customer suffers "direct physical loss or damage to" their property and that damage prevents the supplier from supplying the insured or the customer from accepting the insured's goods or services. (*Id.* at CCPolicy_0027.) The provision states:

> 1. CONTINGENT TIME ELEMENT: If direct physical loss or damage to property of the type insured under this **Policy** of a direct supplier or direct customer of the Insured is damaged by a **Covered Cause of Loss**, and such loss or damage:
>
> a. Wholly or partially prevents any direct supplier from supplying their goods and/or services to the Insured; or
>
> b. Wholly or partially prevents any direct customer from accepting the Insured's goods and/or services;
>
> then this **Policy** is extended to cover the actual loss of income and **Extra Expense** sustained by the Insured during the Period of Interruption with respect to such property of the supplier or customer that sustains such loss or damage.

(*Id.*)

The Extra Expense provision covers additional expenses incurred to temporarily continue operations following an interruption from "direct physical loss or damage to" property. (*Id.* at CCPolicy_0028.) The provision states:

> 3. EXTRA EXPENSE: This **Policy** is extended to cover the loss sustained by the Insured for **Extra Expense** during the Period of Interruption resulting from direct physical loss or damage by a **Covered Cause of Loss** to Insured Property utilized by the Insured. **Extra Expense** means reasonable and necessary:
>
> a. Extra expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and
>
> b. Extra costs of temporarily using property or facilities of the Insured or others….

(*Id.*)

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

The Ingress & Egress provision covers loss of income and extra expenses sustained when physical ingress to or egress from the premises is partially or totally prohibited from direct physical loss or damage to *other property* within one mile. (*Id.*) This coverage would apply, for example, where debris from a fire on a neighboring property temporarily prevents ingress to or egress from the insured property. The provision states:

> 4. INGRESS & EGRESS: This **Policy** is extended to cover the actual loss of income and **Extra Expense** sustained during the period of time when partial or total physical ingress to or egress from the Insured's real or personal property is prohibited as a direct result of a **Covered Cause of Loss** to property of others, provided that such property of others is within [one mile] from the **Insured Location** ….

(*Id.*)

Finally, the Civil Authority provision covers loss of income and extra expenses sustained when access to the property is partially or totally prohibited from a government order issued in response to direct physical loss or damage to *other property* within one mile. (*Id.*)

> 5. INTERRUPTION BY CIVIL OR MILITARY AUTHORITY: This **Policy** is extended to cover the actual loss of income and **Extra Expense** sustained during the period of time when an order of civil or military authority prohibits total or partial access to the Insured's real or personal property, provided such order is a direct result of a **Covered Cause of Loss** to property of others and such property of others is within [one mile] from the **Insured Location** ….

(*Id.* at CCPolicy_0006, 28.) The Civil Authority provision would apply, for example, where local authorities temporarily cordon off an area following a fire at another property, within one mile of the insured property, prohibiting access to the insured property.

**C. The Policy Excludes Loss or Damage Caused by Health-Harming Contaminants, Specifically Including a "Virus."**

The Policy expressly excludes coverage for any loss or damage "caused directly or indirectly by" contaminants that "can cause or threaten damage to human health or human welfare," including "virus[es]." (*Id.* at CCPolicy_0018-19, 48 (the "Contaminant Exclusion").) The Contaminant Exclusion states:

> [T]he Company does not insure for loss or damage caused ***directly or indirectly*** by any of the following perils. Such loss or damage is excluded ***regardless of any other cause or event contributing concurrently or in any sequence*** to the loss or damage. . . .:

> The actual, alleged or threatened release, discharge, escape or dispersal of **Pollutants or Contaminants**, all whether ***direct or indirect***, proximate or remote or ***in whole or in part*** caused by, ***contributed to*** or aggravated by any **Covered Cause of Loss** under this **Policy**….
>
> **Pollutants or Contaminants** means ***any*** solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release ***can cause or threaten damage to human health or human welfare*** or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, ***virus***, or hazardous substances listed in applicable environmental state, federal or foreign law or regulation, or as designated by the U.S. Environmental Protection Agency or similar applicable state or foreign governmental authority. Waste includes materials to be recycled, reconditioned or reclaimed. **Pollutants or Contaminants** does not include **Fungus, Mold or Spore.**

(*Id.* (bold italics added; bold in original).)

## ARGUMENT

To survive a motion to dismiss, the insured must allege facts which, if true, would "allow[] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679. Legal conclusions need not be taken as true even when they are cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Further, "The court need not accept as true … allegations that contradict facts that may be judicially noticed by the court." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *see also Williams v. Nat'l Default Servicing Corp.*, No. 2:16-CV-1860-GMN-NJK, 2017 WL 114080, at *3 (D. Nev. Jan. 10, 2017) (same), *aff'd*, 708 F. App'x 376 (9th Cir. 2017).

Circus Circus's allegations fail as a matter of law because it cannot raise a reasonable inference that the Policy covers its losses and because the losses are excluded by the Contaminant Exclusion.

### I. Circus Circus Does Not Allege Facts that Could Support a Finding of Coverage.

Under Nevada law, "[p]olicy terms should be viewed in their plain, ordinary and popular connotations." *Fourth Street Place v. Travelers Indem.*, 270 P.3d 1235, 1239 (Nev. 2011). "Where the provisions of a policy are clear and unambiguous, the Court must enforce them as written." *Christensen v. Darwin Nat'l Assur. Co.*, No. 2:13-CV-956-APG-VCF, 2014 WL

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1628133, at *4 (D. Nev. Apr. 14, 2014), *aff'd*, 645 F. App'x 533 (9th Cir. 2016); *see also Hunt v. AAA Nevada Ins. Co.*, 369 F. Supp. 3d 1113, 1117 (D. Nev. 2019) (interpretation of an insurance contract presents a question of law).

Circus Circus cannot meet its burden of proving its claims are covered under the Policy. *See Cty. Of Clark v. Factory Mut. Ins. Co.*, No. CV-S-02-1258-KJD-RJJ, 2005 WL 6720917, at *4 (D. Nev. Mar. 28, 2015) ("The insured … bears the burden of proving that its alleged loss falls within the terms of the various provisions under which it seeks coverage." (citing *Lucini-Parish Ins. v. Buck*, 836 P.2d 627, 629 (Nev. 1992)). All of the provisions of the Policy that Circus Circus claims apply require "direct physical loss or damage to" property. But taking as true the well-pleaded facts and rejecting the conclusory allegations in the Complaint, as this Court must, Circus Circus has not raised a reasonable inference that its losses were caused by direct physical loss or damage to property. There was no physical alteration of the property. Even if there was, the Complaint makes clear that it was not the cause of Circus Circus's alleged losses. Circus Circus's Complaint alleges that Circus Circus suffered a purely financial loss as a result of compliance with a prophylactic government order designed to enforce social distancing and mitigate the spread of COVID-19 and not because of an alleged direct physical loss or damage to property caused by the virus or anything else.

Indeed, five courts that have to date addressed similar claims for COVID-19-related losses are in agreement: property insurance policies like the one at issue in this case do not cover such losses. (Ex. 1, *Diesel Barbershop*; Ex. 2, *Social Life Magazine*; Exs. 4-5, *Gavrilides*; Ex. 6, *Rose's 1*; Exs. 14-15, *Inns by the Sea*.) And the one case to date that issued an order denying a motion to dismiss did so in a case involving a very different policy, different allegations, and an incorrect reading of different state law, as discussed further below. (Ex. 7, *Studio 417*.)

### A. The Phrase "Direct Physical Loss or Damage to Property" Requires Tangible, Physical Alteration of the Property.

The Policy expressly and repeatedly states that it covers "direct physical loss or damage to" property. (Compl. Ex. A, CCPolicy_0018; *see also, e.g.*, *id.* at 25, 27, 28.) This requirement applies equally to the Property, Time Element, and Additional Time Element coverages. (*See,*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

*e.g.*, *id.* at 25 (loss of income is paid during the "Period of Interruption," defined as beginning with "the time of ***direct physical loss or damage***"); *id.* at 27 (stating that the Additional Time Element provisions are "subject to the terms and conditions of [the] Policy").)

Although Nevada courts have not ruled on what constitutes direct physical loss or damage to property in the context of property insurance, courts in California have found that the phrase "direct physical loss or damage" requires tangible, demonstrable change, and such cases are especially persuasive under Nevada law.[3] For instance, in *MRI Healthcare Center of Glendale, Inc. v. State Farm General Insurance Co.*, 187 Cal. App. 4th 766, 779 (2010), the California Court of Appeals held that there must be "a distinct, demonstrable, physical alteration of the property" to implicate coverage for direct physical loss. The court explained: "For there to be a 'loss' within the meaning of the policy, some external force must have acted upon the insured property to cause a physical change in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term." *Id.* at 780; *see also Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 39 (2018) (diminution in value of wine collection after purchase of counterfeit wine was not a covered peril, because it was not property damage); *State Farm Fire & Cas. Co. v. Superior Court*, 215 Cal. App. 3d 1435, 1445 (1989) ("Neither diminution in value nor the cost of repair or replacement are active physical forces—they are not the cause of the damage to the structures; they are the measure of the loss or damage."); *Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.,* No. CV 06-4766 CAS, 2008 WL 3009889, *6 (C.D. Cal. Mar. 20, 2008) (in order to establish direct physical loss or damage to yarn, insured was required to show "some tangible change in the yarn" or "some detectable physical change"); *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1990) (finding no physical loss from asbestos; "The building has remained physically intact and

---

[3] "Where the Nevada Supreme Court has not addressed an issue," district courts use their "'best judgment to predict how that court would decide it.'" *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1235 n.11 (D. Nev. 2010) (quoting *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir.1997)). "In the context of interpreting insurance policy terms, the Nevada Supreme Court has often looked to persuasive precedent from other jurisdictions, *especially California*." *Id.* (emphasis added).

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

undamaged. The only loss is economic."), *aff'd*, 953 F.2d 1387 (9th Cir. 1992). Indeed, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A Couch on Ins. § 148:46 (emphasis added).[4]

Here, Circus Circus does not allege any tangible, physical alteration to its property.

**B. The Mere Existence of COVID-19 in or on Property Is Not Direct Physical Loss or Damage.**

At most, the Complaint suggests, in conclusory fashion, that COVID-19 caused "physical loss and damage" but provides no supporting factual allegations. (*See, e.g.*, Compl. ¶¶ 36, 54.) The Complaint alleges that Circus Circus "experienced direct 'physical damage' to its property because of COVID-19" and that "COVID-19 causes physical damage to property because it contaminates objects and surfaces." (Compl. ¶ 54.) But the Complaint does not allege how COVID-19 physically altered any of ***Circus Circus's*** property or any property ***within one mile*** of its property. Thus, the Court can reject these conclusory allegations on a Motion to Dismiss. *E.g.*, *Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 679 (court must use "judicial experience and common sense" in "[d]etermining whether a complaint states a plausible claim for relief").

Indeed, in granting an insurance company's motion to dismiss, Judge Ezra said that, even if COVID-19 was on the property, COVID-19 does not create a "distinct, demonstrable physical alteration of the property." (Ex. 1, *Diesel Barbershop*, at 14.) Judge Ezra distinguished COVID-19 from cases involving "noxious odor that makes a business uninhabitable" because physical

---

[4] *See also* Definition of "Physical," Lexico, ("Relating to things perceived through the senses as opposed to the mind; tangible or concrete."), *available at* https://www.lexico.com/en/definition/physical.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

loss or damage required a "demonstrable physical alteration of the property." (*Id.* (citing *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F.App'x 465, 470 (5th Cir. 2006).) In another case, the Southern District of New York rejected a motion for preliminary injunction by an insured printing company, stating: COVID-19 "damages lungs. It doesn't damage printing presses." (Ex. 2, *Social Life Magazine* at 5, 15;[5] *see also* Ex. 4, *Gavrilides* at 18-19, (direct physical loss or damage has to be "something with material existence. Something that is tangible."); Ex. 6, *Rose's 1* at 5 (direct physical loss requires a "effect on the material or tangible structure of the insured properties").)

Those cases are consistent with pre-COVID case law in other contexts holding that temporary deposits on surfaces, which can be cleaned, are not direct physical loss or damage. *See, e.g. Universal Image Productions, Inc. v. Federal Ins. Co.*, 475 F. App'x 569, 574, n.8 (6th Cir. 2012) (items that could be cleaned by "Lysol" and ordinary washing had not suffered physical loss); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1144 (Ohio App. 2008) (black staining from mold was not direct physical loss because it "was only temporary and did not affect the structure of the wood"); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974 at *9 (S.D. Fla. June 11, 2018) (dust and debris on the property, which needed to be cleaned, was not direct physical loss or damage), *aff'd* No. 18-12887, at 23 (11th Cir. Aug. 18, 2020) (attached as Ex. 13) ("We conclude that the district court correctly granted summary judgment on Berries' cleaning claim because, under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'"). Indeed, according to Circus Circus's allegations, COVID-19 has temporal limitations and will no longer be "detectable" after a matter of hours or days, even if no cleaning occurs. (Compl. ¶

---

[5] The plaintiff in *Social Life Magazine* voluntarily dismissed its case following the court's denial of its preliminary injunction, and thus no written opinion was issued. (*See* Ex. 3.) A copy of the hearing transcript is available through the Federal Court's PACER filing system. A file-stamped copy of the hearing transcript reflecting the Court's ruling and rationale is attached as Exhibit 2. This court may take notice of this judicial opinion. *Woods v. Carey*, 249 F. App'x 640, 641 (9th Cir. 2007) (citing *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002)).

26.) In other words, at most, COVID-19 simply rests on surfaces and does not cause any physical loss or damage, particularly where it can simply be wiped away.

**C. Purported Damage from COVID-19 Did Not Cause Plaintiff's Alleged Losses.**

But, even if the mere existence of COVID-19 on property could be direct physical loss or damage, Circus Circus has not alleged that the existence of COVID-19 on its property was the actual *cause of* its alleged losses, as required to fall within the Policy's coverage. In fact, although the Complaint alleges, in one conclusory sentence, that Circus Circus closed "[a]s a direct result of COVID-19," (*e.g.*, Compl. ¶ 40), the Complaint carefully avoids alleging that Circus Circus closed because of any purported physical damage created by the existence of COVID-19 on the insured property. Instead, the allegations in the Complaint make clear that Circus Circus closed because of the Governor's orders, and not from any purported physical damage. Indeed, as Circus Circus alleges, it remained opened for business until very literally the final minute the prophylactic government orders required Circus Circus to cease gaming operations.

In particular, Circus Circus alleges that "[p]ersons infected with COVID-19 were present at Circus Circus *prior to* March 18, 2020." (Compl. ¶ 41 (emphasis added).) It points to the number of sick days its employees took and the number of guests on its property in the months prior to its closure, from January and mid-March. (Compl. ¶ 42.) But the Complaint does not allege that Circus Circus closed (or took any other action) because of those allegedly infected people on its property. Instead, the Complaint is clear and unequivocal in alleging that Circus Circus did not close any portion of its operations until the exact moment a prophylactic government order required it to cease gaming operations. (Compl. ¶¶ 39, 40 ("Circus Circus closed its doors at 12:01 AM on March 18, 2020," two minutes after the Governor's order went into effect); *see also* Ex. 2, *Social Life Magazine* at 8 ("That is what has caused the damage is that the governor has said you need to stay home. It is not that there is any particular damage to your specific property….").)

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**D. The Governor's Orders Are Not "Direct Physical Loss or Damage" to Property.**

To get around the obvious conclusion that COVID-19 harms people but does not damage property and did not cause Circus Circus to suspend its operations, Circus Circus also alleges that the Governor's orders are *themselves* direct physical loss to property. (Compl. ¶ 37.) But again, Circus Circus does not allege that these orders caused any physical, tangible alteration to its property. *E.g.*, *MRI Healthcare*, 187 Cal. App. 4th at 779; *Meridian Textiles*, 2008 WL 3009889 at *6; 10A Couch on Ins. § 148:46. Nor could it.

Three courts have rejected that same argument. In finding no coverage for COVID-19-related losses on a motion to dismiss, a Michigan court rejected conclusory allegations that government shut-down orders caused "physical loss of or damage to" property. (Ex. 4, *Gavrilides* at 19-21.) There, the plaintiff argued that government orders constituted direct physical loss or damage to its restaurant because "people were physically restricted from dine-in services." (*Id.*) In dismissing the complaint with prejudice, the court said: "that argument is just simply nonsense. And it comes nowhere close to meeting the requirement that there's some, there has to be some physical alteration" to property. (*Id.*) Similarly, in *Diesel Barbershop*, the court held that the insureds "fail[ed] to plead a direct physical loss" where they alleged "loss of use of the Properties due to the Orders restricting usage of the Properties." (Ex. 1 at 11, 15.) In *Rose's 1*, a District of Columbia court held that government shut-down orders did not cause "direct physical loss" because they "did not have any effect on the material or tangible structure of the insured properties." (Ex. 6 at 5 (finding no support for the proposition that "a government edict" restricting the use of property "standing alone, constitutes direct physical loss under an insurance policy").) Finally, in *Social Life,* the court held that business interruption loss due to government orders imposed to prevent the spread of "a virus that is running amuck in the community" is not covered under a property insurance policy. (Ex. 2 at 5-8 (no coverage under business interruption provisions of property policy where "what has caused the damage is that the governor has said you need to stay home").)

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

This caselaw is consistent with pre-COVID holdings in other circuits that government orders do not constitute "direct physical loss." *E.g.*, *Source Food Tech., Inc. v. US Fidelity & Guarantee Co.*, 465 F.3d 834, 836 (8th Cir. 2006) (government embargo prohibiting shipment of beef did not cause "physical loss to property"); *Newman Myers Kreines Gross Harris P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (policyholder did not suffer "direct physical loss" when authorities shut off power to certain areas of New York City in advance of Superstorm Sandy because the phrase "unambiguously, requires some form of actual, physical damage to the insured premises"); *Prime Alliance Group, v. Hartford Fire Ins. Co.*, No. 06-22535-CIV, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007) (government's evacuation of an area in anticipation of a hurricane was not a "risk of direct physical damage").

If taken as true, Circus Circus's allegation that the Governor's orders are direct physical loss to property means that any change in circumstance anywhere in the world that negatively impacts Circus Circus's bottom line results in recovery under the Policy. For example, by Circus Circus's logic, if the Nevada legislature were to make gambling illegal, AIG would have to pay Circus Circus for its resulting purely financial losses. But that would be an absurd outcome as the Policy is a ***property*** insurance policy, insuring against "***direct physical loss or damage***" to property. The Policy does not cover pure economic loss that is not tied to actual property damage.

**E. Circus Circus Does Not Allege Facts Necessary to Fall within the Policy's Additional Time Element Coverages.**

In addition to Property and Time Element coverages (Counts II and III), Circus Circus seeks to recover under the Additional Time Element Coverages (Count IV). But Circus Circus has not alleged facts required to come within the specific factual circumstance to which those coverages apply.

The Contingent Time Element provision requires "direct physical loss or damage to property . . . of a direct supplier or direct customer." (Compl. Ex. A, CCPolicy_0027.) Circus Circus alleges no facts to support its conclusory allegation that its "direct suppliers and customers have experienced direct physical loss and/or damage to their [ ] property," or that such "direct physical loss or damage… prevented the suppliers from supplying their goods and services to

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Circus Circus and the customers from accepting Circus Circus's goods and services." (Compl. ¶¶ 63-64.)

The Extra Expense provision likewise requires direct physical loss or damage. (Compl. Ex. A, CCPolicy_0028 ("This **Policy** is extended to cover the loss sustained by the Insured for **Extra Expense** during the Period of Interruption resulting from direct physical loss or damage" to property.).) As established above, Circus Circus has not alleged any facts that could support a finding that there has been direct physical loss or damage to its property or that it closed because of such damage. Nor has Circus Circus alleged any facts that could demonstrate a "Period of Interruption." Further, Circus Circus has not alleged any extra expenses that were needed to "temporarily continue as nearly normal as practicable." (*Id.*) To the contrary, Circus Circus has alleged that it "closed its doors" when required to do so by the governor's order. (Compl. ¶¶ 39-40.)

Circus Circus's claim under the Ingress & Egress provision likewise fails. The Ingress & Egress provision is "subject to the terms and conditions of this Policy," including the term that the Policy protects against "direct physical loss or damage to" property, which in the case of this provision is "property of others" within one mile of the Insured Property. (*Id.* at CCPolicy_0006, 18, 27-28.) Circus Circus does not allege physical loss or damage to any other property, much less property within one mile. Nor does Circus Circus allege that the damage to other property "prohibited" "***physical*** ingress to or egress from" the Insured's property. (*Id.* at CCPolicy_0028 (emphasis added).) At most, Circus Circus alleges in a conclusory fashion that the Governor's orders caused a "prohibition of access"—but not that persons could not "physically" access the property. Indeed, the Governor's orders say nothing about prohibiting access but rather restrict gaming activities to prevent people from congregating together. In fact, Circus Circus's 3,800 hotel rooms were deemed an essential business permitted to continue operating. (Compl. ¶¶ 8, 43 & Ex. D at 12 (listing "hotels" as essential businesses); *see also* Ex. 9, Decl. of Emergency Directive 002 at § 2 (noting that gaming licensees could continue offering certain hotel accommodations).)

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Circus Circus's claim under the Civil Authority provision is fatally flawed, for at least three independent reasons. First, like the other Additional Time Element provisions, it is "subject to the terms and conditions of this Policy," including the term that the Policy protects against "direct physical loss or damage to" property, which in the case of this provision is "property of others" within one mile of the Insured Property. (*Id.* at CCPolicy_0006, 18, 27-28.) But again, Circus Circus does not allege facts identifying physical damage at any property, within one mile or otherwise. Second, Circus Circus does not allege any facts giving rise to an inference that the government order requiring it to cease gaming observations was a "direct result" of such damage at a property within one mile. To the contrary, the orders attached to the Complaint state that they are implemented to prevent the spread of COVID-19 through certain activities that "result in the congregation of persons for extended periods of time." (Ex. 9, Decl. of Emergency Directive 002). Finally, the alleged government orders are directed at prohibiting activities that "promulgate[] the spread of COVID-19, including gaming activities. While the order eliminates a ***purpose*** for being on the insured property (gaming activity that results in congregation of persons for extended periods of time) it does not prohibit ***access*** to the property. *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (While order grounding planes after September 11 "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke [Civil Authority] coverage"). None of the Governor's orders say anything about access to property but instead speak in terms of limiting certain business operations to promote social distancing. To the extent the Complaint's conclusory allegations suggest otherwise, the Court should disregard them. *See also Shwarz*, 234 F.3d at 435 (on a motion to dismiss, court can reject "allegations that contradict facts that may be judicially noticed by the court"). The Policy does not cover economic losses from those types of government regulations.

Accordingly, Circus Circus cannot establish coverage under any of the Additional Time Element coverages.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**II. *Studio 417* Does Not Support Coverage for Circus Circus's Claim.**

The only court AIG is aware of to issue an order denying a motion to dismiss to allow a business interruption claim for COVID-19 losses to continue, *Studio 417*, is both distinguishable and wrongly decided. First, in *Studio 417* there was no "exclusion [in the policy] for losses caused by viruses or communicable diseases." (Ex. 7 at 2.) As discussed in the next section, Circus Circus's policy contains an exclusion for loss or damage caused by a health-harming virus, and its claims should be dismissed for that reason alone.

Second, *Studio 417* held that plaintiffs' claim survived dismissal because "Plaintiffs … allege that this physical substance [the COVID-19 virus] is likely on their premises and ***caused them to cease or suspend operations***." (*Id.* at 11, 12. (emphasis added).)[6] In contrast, Circus Circus alleges that a disease (and not a virus) was on its property for *months* but does not allege that COVID-19 ***caused*** it to take any action whatsoever until exact moment the government required it to shut down gaming operations. Neither *Studio 417* nor any other case has held that business interruption caused by prophylactic government orders entered to facilitate social distancing and mitigate the spread of disease in response to the COVID-19 pandemic are covered under a property insurance policy. Indeed, the cases are to the contrary. (*E.g.*, Ex. 1 *Diesel Barbershop*, at 18 (no coverage for interruption allegedly caused by government orders); Ex. 6, *Rose's 1*, at 5 (no coverage because government orders "did not effect any direct changes to the propert[y]"); Ex. 4, *Gavrilides* at 20 (argument that government orders caused physical loss or damage was "simply nonsense"); Ex. 2, *Social Life Magazine* at 5 (no coverage for orders issued to prevent spread of virus that "is running amuck" in the community).)

Finally, *Studio 417* wrongly concluded that "physical loss" could exist without a tangible physical alteration to the property. The *Studio 417* court reasoned that physical loss must mean

---

[6] The *Studio 417* court apparently interpreted allegations that the plaintiffs closed "[a]s a result of the presence of COVID-19 and the Closure Orders" (*see* Ex. 8, Studio 417 Compl., No. 6:20-CV-03127-SRB, ECF No. 1, ¶ 79) as alleging that the closures were caused by the presence of COVID-19 on the insured property. (Ex. 7, *Studio 417* at 12.) That does not appear to be a fair reading of Studio 417's complaint, which details government orders closing or restricting the business at issue and does not include any allegations that plaintiffs ever identified COVID-19 on their own property much less any factual support for a conclusion that the Plaintiff suffered a business loss as a result of COVID-19 on its property.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

something different than physical damage. Other courts, however, have held that physical loss is different from physical damage because it includes theft, which deprives the insured of ***physical*** possession of property without necessarily causing any physical damage. *E.g.*, *Northeast Georgia Heart Center PC v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *1 (N.D. Ga. May 23, 2014). Importantly, however, the loss of possession must still be physical: "Without doubt, losing physical possession may qualify as a direct physical loss. Nonetheless, ***there is a difference between a loss of physical possession and a loss of use***." *Id.* (emphasis added); *see also Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 7 (N.Y. App. Div. 2002) (government order that had the effect of precluding insured's use of its property was not "direct physical loss"). Indeed, Circus Circus's Policy expressly excludes "loss of use." (Compl. Ex. A, CCPolicy_0020.) Moreover, as explained in Section I.A., courts in the Ninth Circuit and California require tangible, demonstrable change——and the California decisions are especially persuasive in Nevada. (*See also* Ex. 1, *Diesel Barbershop*, at 13 (rejecting caselaw finding "physical loss despite the lack of physical damage" because "the line of cases requiring tangible injury to property are more persuasive here"). Thus, *Studio 417* does not support Circus Circus's complaint.

## III. Circus Circus's Losses Are Excluded Because They Result from Actual or Threatened Contamination by a Virus Which Harms Human Health.

Even if Circus Circus had alleged facts that could come within the Policy's coverage, the Complaint should also be dismissed for the separate and independent reason that its claimed purely financial losses are excluded because they were caused, in whole or in part, by a virus.

The Policy expressly excludes coverage for "loss or damage caused directly or indirectly" by "[t]he actual, alleged or threatened release, discharge, escape or dispersal" of "virus." (Compl. Ex. A, CCPolicy_0019, 48.) The exclusion applies "regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage." (*Id.* at CCPolicy_0018.) That is, even if the loss or damage was concurrently caused by a peril covered under the Policy, the Policy does not cover the loss. *See, e.g.*, *Probuilders Specialty Ins. Co. v. Double M Constr.*, 116 F. Supp. 3d 1173, 1181 (D. Nev. 2015); *Schroeder v. State Farm Fire & Casualty Co.*, 770

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

F. Supp. 558, 561 (D. Nev. 1991). This exclusion applies regardless of other concurrent causes—*i.e.*, regardless of whether the virus caused loss or damage that is "direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any **Covered Cause of Loss**." (Compl. Ex. A, CCPolicy_0019.)[7] There is no legitimate question that the virus that causes COVID-19 is a contaminant that "can cause or threaten damage to human health or human welfare." Indeed, Circus Circus alleges that COVID-19 has killed more than 127,000 Americans. (Compl. ¶ 19.) In addition, Circus Circus alleges that its losses were "caused by, contributed to or aggravated by" COVID-19 and the government orders issued "to slow the spread of COVID-19." (*E.g.*, Compl. ¶¶ 29, 36, 40.) Such losses are excluded.

Reading similar language, the court in *Diesel Barbershop* found the policyholder's losses excluded. (Ex. 1.) There, the court reasoned: "While the [government closure] Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community." (*Id.* at 17.) Thus, the policy's concurrent cause language "excluded coverage for the losses Plaintiffs incurred in complying with the Orders." (*Id.*) The court went further, noting: "Even if the Court found direct, physical loss to the Properties, the Virus Exclusion applies and bars Plaintiffs' claims." (*Id.* at 18.)

Notably, the Complaint does not dispute that the Policy excludes losses from viruses. Nevertheless, Circus Circus claims this exclusion does not apply because the exclusion "does not include communicable disease" and "COVID-19 is a communicable disease" not a virus. (Compl. ¶¶ 84-85.) For purposes of this exclusion, this is a distinction without a difference. COVID-19 is caused by a virus.[8] (*See, e.g.*, Compl. ¶ 26 at n.7, citing NIH article, attached as

---

[7] Significantly, the exclusion applies to any "loss or damage" from the COVID-19 virus. While the Policy requires direct physical loss or damage to come within coverage, the exclusion applies to any loss from the COVID-19 virus (including even a purely economic loss, like Circus Circus's loss here), and even when there has been only a "threat" of discharge.

[8] *See also* NRS 441A.040 ("'Communicable disease' means a disease which is caused by a specific infectious agent or its toxic products, and which can be transmitted, either directly or indirectly, from a reservoir of infectious agents to a susceptible host organism."); NRS 441A.063 ("'Infectious disease' means a disease which is caused by pathogenic microorganisms, including,

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Ex. 10 ("The virus that causes coronavirus disease 2019 (COVID-19)….").) Indeed, COVID-19 stands for "Corona*virus* disease 2019." (*See* Compl. ¶ 24 n.5, citing WHO Situation Report 73, attached as Ex. 11 (emphasis added).) Thus, Circus Circus's COVID-19-related losses were caused "in whole or in part," directly or indirectly, proximately or remotely, by a virus. (*Id.* at CCPolicy_0019.)

Jumping through hoops to avoid the exclusion, Circus Circus next argues that "COVID-19 was not 'release[d], discharge[d], escape[d] or disperse[d].'" (Compl. ¶ 80.) But these allegations defy the plain meaning of those words and Circus Circus's own theory of coverage. For example, Circus Circus alleges that COVID-19 is transmitted from infected persons to other persons. (Compl. ¶¶ 24-25.) Circus Circus cites source after source explaining that COVID-19 is transmitted via "respiratory droplets" that are released, discharged or dispersed from a sick person through, for example, "coughing or sneezing." (*See* Compl. ¶ 24 n.5, citing WHO Situation Report 73, attached as Ex. 11 ("primarily transmitted from symptomatic people to others who are in close contact through respiratory droplets"); *id.* ¶ 26 n.7, citing NIH article, Ex. 10 ("to prevent the spread of SARS-CoV-2" take steps including "Cover your cough or sneeze with a tissue"); *id.* citing WHO article, attached as Ex. 12 ("Droplet transmission occurs when a person is in in close contact (within 1 m) with someone who has respiratory symptoms (e.g., coughing or sneezing) and is therefore at risk of having his/her mucosae (mouth and nose) or conjunctiva (eyes) exposed to potentially infective respiratory droplets.").) Thus, regardless of whether the "origin" of COVID-19 is "unknown," the Complaint's own allegations make clear its loss was the result of actual or threatened "release, discharge, escape or dispersal" of the virus. Indeed, Circus Circus alleges that the government order requiring it to cease gaming operations was entered to "slow the spread of COVID-19." (Compl. ¶¶ 37.) Having conceded that its business was interrupted to slow the spread of a virus, Circus Circus cannot avoid application of the exclusion for losses caused by "actual or threatened" dispersal of a virus.

---

without limitation, bacteria, ***viruses***, parasites or fungi, which spread, either directly or indirectly, from one person to another. ***The term includes a communicable disease***." (emphasis added).).

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CONCLUSION**

This Court should grant this Motion and dismiss Circus Circus's claims with prejudice. Any attempt to amend the Complaint would be futile because amendment cannot change the type of loss (which is economic and not a direct physical loss to property), or the language of the Policy (which excludes claims related to the COVID-19 virus).

Dated: August 18, 2020.

McDONALD CARANO LLP

By: /s/ *Kristen T. Gallagher*
Kristen T. Gallagher (NSBN 9561)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
kgallagher@mcdonaldcarano.com

KEITH MOSKOWITZ
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone: (312) 876-8000
keith.moskowitz@dentons.com
(*pro hac vice to be submitted in 14 days*)

ERIN E. BRADHAM
DENTONS US LLP
2398 East Camelback Road, Suite 850
Phoenix, Arizona 85016
Telephone: (602) 508-3900
erin.bradham@dentons.com
(*pro hac vice to be submitted in 14 days*)

*Attorneys for AIG Specialty Insurance Co.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on this 18th day of August, 2020, I caused a true and correct copy of the foregoing **DEFENDANT AIG SPECIALTY INS. CO.'S MOTION TO DISMISS** to be served via the U.S. District Court's Notice of Electronic Filing system ("NEF") in the above-captioned case, upon the following:

Renee M. Finch
MESSNER REEVES LLP
8945 W. Russell Road, Suite 300
Las Vegas, Nevada 89148
Telephone: (702) 363-5100
rfinch@messner.com

*Attorneys for Plaintiff*

/s/ *Marianne Carter*
An employee of McDonald Carano LLP

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**INDEX OF EXHIBITS**

| **Description** | **Exhibit No.** |
|---|---|
| *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-cv-461-DAE (W.D. Tex. Aug. 13, 2020) (order) | 1 |
| *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 1:20-cv-03311-VEC (S.D.N.Y. May 14, 2020), ECF No. 24-1 (transcript) | 2 |
| *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 1:20-cv-03311-VEC, (S.D.N.Y. May 22, 2020), ECF No. 30 (order) | 3 |
| *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No 20-258-CB (Mich. Cir. Ct. July 1, 2020) (transcript) | 4 |
| *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No 20-258-CB (Mich. Cir. Ct. July 21, 2020) (order) | 5 |
| *Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B (D.C. Sup. Ct. Aug. 6, 2020) | 6 |
| *Studio 417, Inc. et al v. Cincinnati Insurance Co.*, No. 20-cv-03127-SRB (W.D. Mo. Aug. 12, 2020), ECF No. 40 (order) | 7 |
| *Studio 417, Inc. et al v. Cincinnati Insurance Co.*, No. 20-cv-03127-SRB (W.D. Mo. April 27, 2020), ECF No. 1 (complaint) | 8 |
| Nevada Decl. of Emergency Directive 002 | 9 |
| *New Coronavirus stable for hours on surfaces*, National Institute of Health, Mar. 17, 2020, https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces | 10 |
| *Coronavirus disease 2019 (COVID-19) Situation Report - 73*, World Health Organization, Apr. 2, 2020, https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19.pdf?sfvrsn=5ae25bc7_2 | 11 |
| *Modes of transmission of virus causing COVID-19: implications for IPC precaution recommendations*, World Health Organization, Mar. 29, 2020, https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations | 12 |
| *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 18-12887 (11th Cir. Aug. 18, 2020) | 13 |
| *The Inns by the Sea v. Cal. Mutual Ins. Co.*, No. 20cv001274 (Cal. Sup. Ct. Aug. 6, 2020) (order) | 14 |
| *The Inns by the Sea v. Cal. Mutual Ins. Co.*, No. 20cv001274 (Cal. Sup. Ct. Aug. 6, 2020) (complaint) | 15 |