# Exhibit A

# December 31, 2020 Email exchange

**Aucoin, Amanda**

| | |
|---|---|
| **From:** | O'Brien, Stephen J. <stephen.obrien@dentons.com> |
| **Sent:** | Thursday, December 31, 2020 4:41 PM |
| **To:** | Cunio, Christopher J. |
| **Cc:** | Levine, Michael S.; Stellakis, Nicholas D.; Dennis, Katharine; Renee Finch; Kristen T. Gallagher; Thompson, Monica R.; Bradham, Erin E. |
| **Subject:** | Re: Circus Circus LV, LP v. AIG Specialty Ins. Co |
| **Attachments:** | image001.png |

Let's talk Monday. I should be available at/after 2pm ct.

[https://urldefense.proofpoint.com/v2/url?u=http-3A__logo.dentons.com_dentons-5Flogo.png&d=DwIGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=tcNdEsI627ejf8on3TMQRnQUtPFX3ErDguHXpWPZ96Q&m=LuqkY7joAT-4yvmtvyMGWj77zq15ied0lpLajSb8dbg&s=mE-A1dqbBKIZPvETeEwKeyzJfw49MiUCjz3CiJCyKMs&e= ]

Stephen J. O'Brien

Visit the New Dynamic Hub<https://urldefense.proofpoint.com/v2/url?u=https-3A__www.dentons.com_en_issues-2Dand-2Dopportunities_covid-2D19-2Dthe-2Dnew-2Ddynamic-3Futm-5Fcampaign-3Dnew-2Bdynamic-26utm-5Fsource-3Dsignature-2Blink-26utm-5Fmedium-3Demail&d=DwIGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=tcNdEsI627ejf8on3TMQRnQUtPFX3ErDguHXpWPZ96Q&m=LuqkY7joAT-4yvmtvyMGWj77zq15ied0lpLajSb8dbg&s=5mxWDBOz47eQ_Z3vxL0l5UgTp8fn5n9bYKHFO0sgSW0&e= >, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 314 259 5904   |   US Internal 45904
stephen.obrien@dentons.com<mailto:stephen.obrien@dentons.com>
Bio<https://urldefense.proofpoint.com/v2/url?u=http-3A__www.dentons.com_ch.aspx-3Femail-3Dstephen.obrien-40dentons.com-26action-3Dbiolink&d=DwIGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=tcNdEsI627ejf8on3TMQRnQUtPFX3ErDguHXpWPZ96Q&m=LuqkY7joAT-4yvmtvyMGWj77zq15ied0lpLajSb8dbg&s=P4smaOturTMXVBzAL4SA27jT5v3x211twIbb4ABcCT0&e= >   |
Website<https://urldefense.proofpoint.com/v2/url?u=http-3A__www.dentons.com&d=DwIGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=tcNdEsI627ejf8on3TMQRnQUtPFX3ErDguHXpWPZ96Q&m=LuqkY7joAT-4yvmtvyMGWj77zq15ied0lpLajSb8dbg&s=kFPLN8xiS_o7BCV3xzz8jMHeZbTVwP63P0dHJ26mxGs&e= >

Dentons US LLP

Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to
https://urldefense.proofpoint.com/v2/url?u=http-3A__dentons.com_legacyfirms&d=DwIGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=tcNdEsI627ejf8on3TMQRnQUtPFX3ErDguHXpWPZ96Q&m=LuqkY7joAT-4yvmtvyMGWj77zq15ied0lpLajSb8dbg&s=UCNpReMGnP27i8nHuMd8dEqkPR2H21snRtxBwHVi5QY&e=

1

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see https://urldefense.proofpoint.com/v2/url?u=http-3A__dentons.com&d=DwIGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=tcNdEsI627ejf8on3TMQRnQUtPFX3ErDguHXpWPZ96Q&m=LuqkY7joAT-4yvmtvyMGWj77zq15ied0lpLajSb8dbg&s=plUcIR98ecZBw3ie5r298PVsuURXu2z83gkYsWB_woE&e= for Legal Notices.

On Dec 31, 2020, at 3:12 PM, Cunio, Christopher J. <CCunio@hunton.com> wrote:

[External Sender]
Stephen, we were actually going to propose an extension of the discovery deadline (currently 2/18) for the purpose of taking depositions (with corresponding extensions of the deadlines for dispositive motions and the pretrial order) given a number of issues.  Does AIG agree that something along those lines makes sense?  If so, let's talk on Monday afternoon re: same.  Shoot me a time that works for you.  If not, we will check calendars asap, and send you our corresponding list of AIG's experts and fact witnesses that we will depose asap.

Have a Happy New Year.

Thank you,

-Chris

From: O'Brien, Stephen J. <stephen.obrien@dentons.com>
Sent: Thursday, December 31, 2020 4:00 PM
To: Cunio, Christopher J. <CCunio@hunton.com>
Cc: Levine, Michael S. <mlevine@hunton.com>; Stellakis, Nicholas D. <NStellakis@hunton.com>; Dennis, Katharine <KDennis@hunton.com>; Renee Finch <rfinch@messner.com>; Kristen T. Gallagher <kgallagher@mcdonaldcarano.com>; Thompson, Monica R. <monica.thompson@dentons.com>; Bradham, Erin E. <erin.bradham@dentons.com>
Subject: Circus Circus LV, LP v. AIG Specialty Ins. Co

Chris -- a Happy and healthy New Year to you.
As we start the new year, please provide us with dates of availability on/after 1/18/21 for the depositions of:
Alex LeBeau
Angela Rasmussen
Joseph Lewnard
Brian Twellman
Sandra Lewis Watts
For each of these individuals, if you could confirm that the documents Circus Circus has produced to date include all of the Circus Circus facts and data (i.e., not otherwise publicly-available data) that these witnesses have considered by the listed individuals in forming their opinions, that would be helpful.

Additionally, provide dates of availability on/after 2/1/21 for the depositions of:
Brad Anthony
Carrie Kennedy
Laura Moreno
Stuart Richey
Jerry Griffis
Brandy Fierros
We also anticipate seeking the deposition of a Circus Circus corporate representative.  The topics for this deposition will be provided shortly.

Given the state of the pandemic, it is our expectation that all of these depositions will occur by video conference.  Once we have available dates, we will provide notices for each.
If you have any questions or issues, please let me know.

<image001.png>

Stephen J. O'Brien

Visit the New Dynamic Hub<https://urldefense.proofpoint.com/v2/url?u=https-3A__www.dentons.com_en_issues-2Dand-2Dopportunities_covid-2D19-2Dthe-2Dnew-2Ddynamic-3Futm-5Fcampaign-3Dnew-2Bdynamic-26utm-5Fsource-3Dsignature-2Blink-26utm-5Fmedium-3Demail&d=DwMGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=bf2GPToxGrt_Yqc_TCcl9FRJanmiLmkoCUwBACo67AE&m=msg9Dw0ZR9Uw-a1_ZvFl1lhCeQOqY0tVIkLNJBpom1E&s=Mpq2aJ7BfwoxuypVI5gSHNbzVbgKN5kefvLPVvN2kVk&e=>, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 314 259 5904   |   US Internal 45904
stephen.obrien@dentons.com<mailto:stephen.obrien@dentons.com>
Bio<https://urldefense.proofpoint.com/v2/url?u=http-3A__www.dentons.com_ch.aspx-3Femail-3Dstephen.obrien-40dentons.com-26action-3Dbiolink&d=DwMGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=bf2GPToxGrt_Yqc_TCcl9FRJanmiLmkoCUwBACo67AE&m=msg9Dw0ZR9Uw-a1_ZvFl1lhCeQOqY0tVIkLNJBpom1E&s=5Phh3NnVZwgSslRPF4EbAlLyjI9E7gJIJGtmShL2U3A&e=>   |   Website<https://urldefense.proofpoint.com/v2/url?u=http-3A__www.dentons.com&d=DwMGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=bf2GPToxGrt_Yqc_TCcl9FRJanmiLmkoCUwBACo67AE&m=msg9Dw0ZR9Uw-a1_ZvFl1lhCeQOqY0tVIkLNJBpom1E&s=k2jTGnFFH4PfAISXuZANLYo7cvtxTiCih55OapnmJs0&e=>

Dentons US LLP

Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > Hamilton Harrison & Mathews > Mardemootoo Balgobin > HPRP > Zain & Co. > Delany Law > Dinner Martin > For more information on the firms that have come together to form Dentons, go to https://urldefense.proofpoint.com/v2/url?u=http-3A__dentons.com_legacyfirms&d=DwIGaQ&c=jxhwBfk-KSV6FFIot0PGng&r=tcNdEsI627ejf8on3TMQRnQUtPFX3ErDguHXpWPZ96Q&m=LuqkY7joAT-4yvmtvyMGWj77zq15ied0lpLajSb8dbg&s=UCNpReMGnP27i8nHuMd8dEqkPR2H21snRtxBwHVi5QY&e=<https://urldefense.proofpoint.com/v2/url?u=http-3A__dentons.com_legacyfirms&d=DwIGaQ&c=jxhwBfk-

004

KSV6FFIot0PGng&r=tcNdEsI627ejf8on3TMQRnQUtPFX3ErDguHXpWPZ96Q&m=LuqkY7joAT-
4yvmtvyMGWj77zq15ied0lpLajSb8dbg&s=UCNpReMGnP27i8nHuMd8dEqkPR2H21snRtxBwHVi5QY&e= >

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email
may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying,
distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see
https://urldefense.proofpoint.com/v2/url?u=http-3A__dentons.com&d=DwIGaQ&c=jxhwBfk-
KSV6FFIot0PGng&r=tcNdEsI627ejf8on3TMQRnQUtPFX3ErDguHXpWPZ96Q&m=LuqkY7joAT-
4yvmtvyMGWj77zq15ied0lpLajSb8dbg&s=plUcIR98ecZBw3ie5r298PVsuURXu2z83gkYsWB_woE&e=  for Legal Notices.

# Exhibit B

# February 9, 2021 Email exchange

**Aucoin, Amanda**

| | |
|---|---|
| **From:** | Bass, Erin N. <erin.bass@dentons.com> |
| **Sent:** | Tuesday, February 9, 2021 7:59 PM |
| **To:** | Levine, Michael S.; O'Brien, Stephen J.; Cunio, Christopher J. |
| **Cc:** | Bradham, Erin E.; Thompson, Monica R.; Kristen T. Gallagher; Mercier, Stephanie; Dennis, Katharine; Anderson, Britt E.; Stellakis, Nicholas D. |
| **Subject:** | RE: AIG/Circus Circus -- stipulation on insurance expert disclosure |

Caution: This email originated from outside of the firm.

Thanks, Mike. We debated that very question under LR26-3, because we don't think FRCP 29 requires a court order here. Since plaintiff agrees that we don't need to get court approval over our agreement to extend AIG's deadline to submit its claims handling expert's rebuttal report until February 18, then we are good with this approach.

Thanks again. Have a good evening.

Erin

**DENTONS**    **Erin N. Bass**

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 602 508 3967   |   US Internal 63967
erin.bass@dentons.com
Bio   |   Website

Dentons US LLP

Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

**From:** Levine, Michael S. <mlevine@hunton.com>
**Sent:** Tuesday, February 09, 2021 5:36 PM
**To:** Bass, Erin N. <erin.bass@dentons.com>; O'Brien, Stephen J. <stephen.obrien@dentons.com>; Cunio, Christopher J. <CCunio@hunton.com>
**Cc:** Bradham, Erin E. <erin.bradham@dentons.com>; Thompson, Monica R. <monica.thompson@dentons.com>; Kristen T. Gallagher <kgallagher@mcdonaldcarano.com>; Mercier, Stephanie <SMercier@hunton.com>; Dennis, Katharine <KDennis@hunton.com>; Anderson, Britt E. <banderson@hunton.com>; Stellakis, Nicholas D. <NStellakis@hunton.com>
**Subject:** RE: AIG/Circus Circus -- stipulation on insurance expert disclosure

**[External Sender]**

Erin,

There are a couple items in the draft stipulation that need updating/revision (dates, etc.).  However, we are unclear as to why a stipulation is even needed here.  A confirming e-mail should suffice since the expert report is not being filed.

If there is a particular reason why AIG feels a stipulation is required, please let us know.  Otherwise, we'd prefer to avoid the unnecessary filing.

Mike

---

**From:** Bass, Erin N. <erin.bass@dentons.com>
**Sent:** Tuesday, February 9, 2021 7:06 PM
**To:** Levine, Michael S. <mlevine@hunton.com>; O'Brien, Stephen J. <stephen.obrien@dentons.com>; Cunio, Christopher J. <CCunio@hunton.com>
**Cc:** Bradham, Erin E. <erin.bradham@dentons.com>; Thompson, Monica R. <monica.thompson@dentons.com>; Kristen T. Gallagher <kgallagher@mcdonaldcarano.com>; Mercier, Stephanie <SMercier@hunton.com>; Dennis, Katharine <KDennis@hunton.com>; Anderson, Britt E. <banderson@hunton.com>; Stellakis, Nicholas D. <NStellakis@hunton.com>
**Subject:** RE: AIG/Circus Circus -- stipulation on insurance expert disclosure

Caution: This email originated from outside of the firm.

Chris:

Please advise on the stipulation. As you know, Thursday is fast approaching and we want to ensure the court has time to rule.

We will get back to you shortly on the 30(b)(6) topics.

Thanks,

Erin

---

**DENTONS**   Erin N. Bass

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 602 508 3967   |   US Internal 63967
erin.bass@dentons.com
Bio   |   Website

Dentons US LLP

Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

**From:** Levine, Michael S. <mlevine@hunton.com>
**Sent:** Tuesday, February 09, 2021 1:29 PM
**To:** Bass, Erin N. <erin.bass@dentons.com>; O'Brien, Stephen J. <stephen.obrien@dentons.com>; Cunio, Christopher J. <CCunio@hunton.com>
**Cc:** Bradham, Erin E. <erin.bradham@dentons.com>; Thompson, Monica R. <monica.thompson@dentons.com>; Kristen T. Gallagher <kgallagher@mcdonaldcarano.com>; Mercier, Stephanie <SMercier@hunton.com>; Dennis, Katharine <KDennis@hunton.com>; Anderson, Britt E. <banderson@hunton.com>; Stellakis, Nicholas D. <NStellakis@hunton.com>
**Subject:** RE: AIG/Circus Circus -- stipulation on insurance expert disclosure

**[External Sender]**

Thanks, Erin.  We are reviewing and will get back to you shortly.

The draft reminds me that we have not yet received AIG's proposed Rule 30(b)(6) deposition topics.  Would you please let me know when we can expect to receive AIG's topics so we can determine the appropriate witness(es) to respond to the notice and address any topics that may be objectionable.

Thanks.

Mike

**From:** Bass, Erin N. <erin.bass@dentons.com>
**Sent:** Tuesday, February 9, 2021 2:58 PM
**To:** O'Brien, Stephen J. <stephen.obrien@dentons.com>; Levine, Michael S. <mlevine@hunton.com>; Cunio, Christopher J. <CCunio@hunton.com>
**Cc:** Bradham, Erin E. <erin.bradham@dentons.com>; Thompson, Monica R. <monica.thompson@dentons.com>; Kristen T. Gallagher <kgallagher@mcdonaldcarano.com>
**Subject:** RE: AIG/Circus Circus -- stipulation on insurance expert disclosure

Caution: This email originated from outside of the firm.

Michael and Chris:

We have revised the proposed stipulation to address the requirements of the local rules that tripped us up last time. Please review the attached version and let us know if we have your permission to file.

Thanks,

Erin

**DENTONS**   Erin N. Bass

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that

Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 602 508 3967   |   US Internal 63967
erin.bass@dentons.com
Bio   |   Website

Dentons US LLP

Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

**From:** O'Brien, Stephen J. <stephen.obrien@dentons.com>
**Sent:** Tuesday, February 09, 2021 7:18 AM
**To:** Levine, Michael S. <mlevine@hunton.com>; Cunio, Christopher J. <CCunio@hunton.com>
**Cc:** Bradham, Erin E. <erin.bradham@dentons.com>; Bass, Erin N. <erin.bass@dentons.com>; Thompson, Monica R. <monica.thompson@dentons.com>
**Subject:** AIG/Circus Circus -- stipulation on insurance expert disclosure

Michael and Chris -- let us know if this is satisfactory from your end.  Thanks for your cooperation.

DENTONS    Stephen J. O'Brien

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 314 259 5904   |   US Internal 45904
stephen.obrien@dentons.com
Bio   |   Website

Dentons US LLP

Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

# Exhibit C

*JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Insurance Co.*, No. A-20-816628-B (Nev. Dist. Ct. Nov. 30, 2020)

Don Springmeyer, Esq. (NSB No. 1021)
Bradley Schrager, Esq. (NSB No. 10217)
Royi Moas, Esq. (NSB No. 10686)
**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone:  (702) 341-5200
Facsimile:  (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
rmoas@wrslawyers.com

Robin L. Cohen, Esq. (*pro hac vice to be submitted*)
Marc T. Ladd, Esq. (*admitted pro hac vice*)
**MCKOOL SMITH, P.C.**
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Tel:  (212) 402-9400
Fax:  (212) 402-9444
rcohen@mckoolsmith.com
mladd@mckoolsmith.com

*Attorneys for Plaintiff*
*JGB Vegas Retail Lessee, LLC*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| JGB VEGAS RETAIL LESSEE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STARR SURPLUS LINES INSURANCE COMPANY,<br><br>Defendant. | Case No.: A-20-816628-B<br>Dept. No.:  XIII<br><br>**ORDER DENYING DEFENDANT STARR SURPLUS LINES INSURANCE COMPANY'S MOTION TO DISMISS COMPLAINT WITHOUT PREJUDICE** |

012

1

**ORDER DENYING MOTION TO DISMISS**

2      On June 16, 2020, Plaintiff JGB Vegas Retail Lessee, LLC ("Plaintiff" or "JGB") filed its

3 Complaint against Defendant Starr Surplus Lines Insurance Company ("Defendant" or "Starr")

4 asserting four causes of action arising from its insurance claim for coverage under Policy No.

5 SLSTPTY11245819 issued by Starr to JGB (the "Policy"). JGB alleged causes of action for: (1)

6 Breach of Contract; (2) Declaratory Judgment; (3) Violations of the Nevada Unfair Claims Practices

7 Act, N.R.S. 686A.310; and (4) Breach of the Covenant of Good Faith and Fair Dealing.[1] On

8 September 16, 2020, Starr moved to dismiss the entire Complaint with prejudice ("Motion to

9 Dismiss"). JGB filed its opposition to the Motion to Dismiss on October 14, 2020, and Starr filed a

10 Reply in support of the Motion ("Reply") on November 4, 2020. Pursuant to its Minute Order on

11 November 9, 2020, the Court vacated the scheduled hearing due to the continuing coronavirus

12 situation and deemed the matter submitted on the briefs and under advisement as of November 12,

13 2020. The Court, having reviewed the pleadings and the parties' filings related to the Motion to

14 Dismiss (excluding the supplemental filings of Plaintiff on October 26 and November 10, 2020,

15 which have not been reviewed or considered by the Court), rules as follows.[2]

16      The Court first rejects the argument in Starr's Motion to Dismiss that the Policy designates

17 New York as the sole and exclusive venue to resolve any and all disputes arising out of the Policy,

18 and therefore, that Nevada is not the proper forum to adjudicate this action. As Starr contends, the

19 Policy form "General Conditions" provides that "[a]ny suit, action, or proceeding against the

20 COMPANY [*i.e.* Starr] must be brought solely and exclusively in a New York state court or a

21 federal district court sitting within the State of New York." Policy, Property Coverage, General

22 Conditions, § 12(e). However, at Endorsement #27, the Policy also includes a "Service of Process

23 Clause Endorsement," which provides, in part, that:

24

---

25 [1] On July 23, 2020, Starr removed this action to the United States District Court for the District of
Nevada, on the basis of diversity of citizenship. On September 1, 2020, the United States District

26 Court entered the parties' stipulation and order to remand the action to this Court based on a lack of

27 complete diversity between the parties.

[2] The Court provides no opinion regarding which state's law is applicable in denying Starr's Motion

28 to Dismiss.

-1-

1

2

3

4

5

6

> In the event of failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction in the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed . . . that [for] any suit instituted against the Insurer upon this policy, the Insurer will abide by the final decision of such court or of any appellate court in the event of an appeal.

7   Policy, Endt. 27. The Service of Process Clause Endorsement continues, that "pursuant to any statute

8   of any state, territory, or district of the United States," Starr "designates the Superintendent,

9   Commissioner or Director of Insurance, or other officer specified for that purpose in the statute" as

10  its agent for service of process. *Id.* The Court finds that there is a conflict between these two

11  provisions and, as an endorsement, the Service of Process Clause Endorsement governs over the

12  forum selection clause in the Policy's form. *See Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins.*

13  *Co.*, 88 F. Supp. 3d 1156, 1162-65 (S.D. Cal. 2015) (holding that the Service of Suit Endorsement

14  "changed the original insurance agreement" that contained a forum selection clause and

15  "unambiguously permits Plaintiff to bring suit in a forum of its choosing."); *Wayne Cnty. Airport*

16  *Auth. v. Allianz Glob. Risks U.S. Ins. Co.*, No. 11-15472, 2012 WL 3134074, at *3 (E.D. Mich. Aug.

17  1, 2012) ("[Insurers] seek dismissal and enforcement of the forum selection clause that was

18  bargained away. The [insurers] are not entitled to enforce the forum selection clause in the policy

19  over that in the endorsement."). Moreover, Starr has failed to show that Nevada is an inconvenient

20  forum to justify dismissal. *See* N.R.S. 13.050(2)(c); *Provincial Gov't of Marinduque v. Placer*

21  *Dome, Inc.*, 131 Nev. 296, 300-07, 350 P.3d 392, 396-400 (2015). Accordingly, this action is

22  properly within the jurisdiction of this Court, and Starr's Motion to Dismiss on forum is denied.

23      The Court next analyzes Starr's arguments for dismissal under NRCP 12(b)(5). When a court

24  considers a motion to dismiss under NRCP 12(b)(5), the "court will recognize all factual allegations

25  in [the] complaint as true and draw all inferences in its favor." *Buzz Stew, LLC v. City of N. Las*

26  *Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). "A complaint need only set forth sufficient

27  facts to demonstrate the necessary elements of a claim for relief so that the defending party has

28  adequate notice of the nature of the claim and relief sought." *W. States Constr., Inc. v. Michoff*, 108

Nev. 931, 936, 840 P.2d 1220, 1223 (1992). Thus, the complaint "should be dismissed only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Buzz Stew*, 124 Nev. at 228, 181 P.3d at 672.

On the first cause of action, JGB states a ~~valid~~ claim for relief for breach of the Policy. The Policy's initial coverage grant provides that it "covers the property insured hereunder against all risks of direct physical loss or damage to covered property while at INSURED LOCATIONS occurring during the Term of this POLICY, except as hereinafter excluded or limited." Policy, Property Coverage, General Conditions, § 1; *see* Compl. ¶¶ 30-32. The Policy also provides certain "TIME ELEMENT" coverages for business interruption losses; the main section provides coverage for "[l]oss directly resulting from necessary interruption of the Insured's NORMAL business operations caused by direct physical loss or damage to real or personal property covered herein[.]" Policy, Business Interruption, § 1; *see* Compl. ¶¶ 33-40. Also included in the TIME ELEMENT COVERAGE is "Interruption by Civil or Military Authority."[3]

JGB's Complaint alleges the physical presence and known facts about the coronavirus, including that it spreads through infected droplets that "are physical objects that attach to and cause harm to other objects" based on its ability to "survive on surfaces" and then infect other people. Compl. ¶¶ 16-20. JGB also alleges that by March 11, 2020, COVID-19 was present at the Mirage casino, within one mile from JGB's Grand Bazaar Shops. *Id.* ¶ 21. JGB alleges that based on these facts and the location and characteristics of the Grand Bazaar Shops, that it was "highly likely that the novel coronavirus that causes COVID-19 has been present on the premises of the Grand Bazaar Shops, thus damaging the property JGB had leased to its tenants." *Id.* ¶ 26; *see also id.* ¶ 7. The Complaint also states that because the presence of COVID-19 at or near the Grand Bazaar Shops and

---

[3] The coverage part for "Interruption by Civil or Military Authority" provides that:

This POLICY is extended to include, starting at the time of physical loss or damage, the actual loss sustained by the Insured, resulting directly from an interruption of business as covered hereunder, during the length of time, not exceeding the number of days shown under TIME LIMITS stated in the Declarations, when, as a direct result of damage to or destruction of property within one (1) statute mile of an INSURED LOCATION by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil or military authority.

Policy, Business Interruption, § 7.

1  Governor Sisolak's March 20, 2020 Order restricting and prohibiting access to non-essential

2  business, the Grand Bazaar Shops were forced to close and the few restaurants that remained open

3  were severely limited in their operations, resulting in significant losses. *Id.* ¶¶ 26-28.

4         The Court finds that JGB's Complaint sufficiently alleges losses stemming from the direct

5  physical loss and/or damage to property from COVID-19 to trigger Starr's obligations under the

6  property and TIME ELEMENT coverage provisions in the Policy, including coverage for general

7  business interruption and Interruption by Civil or Military Authority. *See, e.g.*, *Studio 417, Inc. v.*

8  *Cincinnati Ins. Co.*, No. 20-cv-03127, 2020 WL 4692385, at *2, *4 (W.D. Mo. Aug. 12, 2020)

9  (complaint alleged direct physical loss, because it alleged that the virus "is a physical substance,"

10  which "live[s] on" and is "active on inert physical surfaces," and that "it is likely that customers,

11  employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby

12  infected the insured properties with the virus" and "the presence of COVID-19 'renders physical

13  property in their vicinity unsafe and unusable'").[4]

14         Starr also moves to dismiss JGB's claim for breach of contract (and related claims) on the

15  basis that any loss or damage suffered by JGB is nonetheless excluded by the Policy's "Pollution and

16  Contamination Exclusion." Motion to Dismiss at 24-26; Reply at 24-27. The Pollution and

17  Contamination Exclusion provides:

18         b. Pollution and Contamination Clause:

19                 This POLICY does not insure against loss or damage caused by or

20         resulting from any of the following regardless of any cause or event
                 contributing concurrently or in any other sequence to the loss:

21  1. contamination;

22  2. the actual or threatened release, discharge, dispersal, migration or seepage of

23         POLLUTANTS at an INSURED LOCATION during the Term of this
             POLICY unless the release, discharge, dispersal, migration, or seepage is

24         caused by fire, lightning, leakage from fire protective equipment, explosion,
             aircraft, vehicles, smoke, riot, civil commotion or vandalism. This POLICY

25         does not insure off premises cleanup costs arising from any cause and the
             coverage afforded by this clause shall not be construed otherwise.

26

27  _____
    [4]  *See also Optical Servs. USA/JCI v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20, 2020 WL

28  5806576 (N.J. Super. L. Aug. 13, 2020); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, No. 20-
    cv-00383, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020).

1  Policy, Property Coverage, General Conditions, § 7(b). The Policy does not define "contamination,"

2  but defines "POLLUTANT or CONTAMINANTS" as:

3      any solid, liquid, gaseous or thermal irritant or CONTAMINANT including, but
       not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, virus, waste,
4      (waste includes materials to be recycled, reconditioned or reclaimed) or hazardous
       substances as listed in the Federal WATER Pollution Control Act, Clean Air Act,
5      Resource Conservation and Recovery Act of 1976, and Toxic Substances Control
       Act, or as designated by the U.S. Environmental Protection Agency.
6

7  Policy, Property Coverage, General Conditions, § 13(T).

8          Starr contends that the Pollution and Contamination Exclusion clearly and unambiguously

9  applies on its face to exclude JGB's claims. Reply at 24-25. As the insurer, Starr bears the burden to

10 prove any clause excludes coverage. *See Nat'l Auto. & Cas. Ins. Co. v. Havas*, 75 Nev. 301, 303,

11 339 P.2d 767, 768 (1959). "[I]f an insurer wishes to exclude coverage by virtue of an exclusion in its

12 policy, it must (1) write the exclusion in obvious and unambiguous language in the policy, (2)

13 establish that the interpretation excluding covering under the exclusion is the only interpretation that

14 could fairly be made, and (3) establish that the exclusion clearly applies to this particular case."

15 *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 164, 252 P.3d 668, 674 (2011) (citing *Alamia v.*

16 *Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 367 (S.D.N.Y. 2007)); *see also Belt Painting*

17 *Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (stating "policy exclusions are given a strict and

18 narrow construction"). Starr has not shown that it is unreasonable to interpret the Pollution and

19 Contamination Exclusion to apply only to instances of traditional environmental and industrial

20 pollution and contamination that is not at issue here,[5] where JGB's losses are alleged to be the result

21 of a naturally-occurring, communicable disease. This is the case, even though the Exclusion contains

22 the word "virus." *See, e.g.*, *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co.*, No. 6:20-cv-

23 1174, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020) ("Denying coverage for losses stemming

24 from COVID-19, however, does not logically align with the grouping of the virus exclusion with

25 other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these

26

27

28 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [5] *See, e.g.*, *Century Surety Co. v. Casino W., Inc.*, 130 Nev. 395, 398-401, 329 P.3d 614, 616-18
   (2014); *Belt Painting*, 100 N.Y.2d at 383-88.

1   kinds of business losses."). Accordingly, the Court finds that the Pollution and Contamination

2   Exclusion does not apply to exclude JGB's claims.

3        On the second cause of action for declaratory relief, for the reasons stated above (*supra* at 2-

4   5), the Court finds that JGB's Complaint sufficiently alleges facts to state a claim upon which relief

5   can be granted for declaratory relief under Nevada law. *See* N.R.S. 30.010 *et seq.* Accordingly,

6   Starr's Motion to Dismiss this cause of action is denied.

7        On the third cause of action, an insurer violates the Unfair Claims Practices Act for, *inter*

8   *alia*, "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions

9   relating to any coverage at issue" or "[f]ailing to effectuate prompt, fair and equitable settlements of

10  claims in which liability of the insurer has become reasonably clear." N.R.S. 686A.310(1)(a) & (e).

11  Regarding the fourth cause of action, "an implied covenant of good faith and fair dealing [is] in

12  every contract." *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 792-93, 858 P.2d 380, 382 (1993).

13  "[W]ith respect to the covenant of good faith and fair dealing . . . '[w]hen one party performs a

14  contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of

15  the other party are thus denied, damages may be awarded against the party who does not act in good

16  faith.'" *Perry v. Jordan*, 111 Nev. 943, 948, 900 P.2d 335, 338 (1995) (citing *Hilton Hotels v. Butch*

17  *Lewis Prods.*, 107 Nev. 226, 234, 808 P.2d 919, 923 (1991)); *see also Pemberton*, 109 Nev. at 793,

18  858 P.2d at 382 ("An insurer fails to act in good faith when it refuses 'without proper cause' to

19  compensate the insured for a loss covered by the policy."); *D.K. Prop., Inc. v. Nat'l Union Fire Ins.*

20  *Co. of Pittsburgh, PA.*, 92 N.Y.S.3d 231, 232-34 (App. Div. 1st Dep't 2019).

21       The Complaint alleges that Starr denied the claim, did so unreasonably, and did so with

22  knowledge that denial was unreasonable. Compl. ¶¶ 10, 46, 61. JGB also alleged that Starr

23  misrepresented the facts of the claim by asserting that "there [wa]s no mention of the [Nevada]

24  orders having been issued because of physical loss or damage" and that it did "not appear that the

25  [Nevada] orders in question prohibited access to the insured premises[.]" *Id.* ¶¶ 45-47. Moreover,

26  JGB alleged that Starr misrepresented the scope of the Policy by citing the Pollution and

27  Contamination Exclusion to apply to coverage, and by requiring that JGB be "physical prevent[ed]"

28  from the premises in order to trigger the TIME ELEMENT coverages. *Id.* ¶¶ 48, 49, 52. Finally, JGB

1  alleged consequential damages from Starr's allegedly unreasonable denial of coverage. *See, e.g., id.*

2  ¶ 83. The Court finds that JGB's Complaint sufficiently alleges facts to state claims upon which

3  relief can be granted for violation of the Nevada Unfair Claims Practices Act and for breach of the

4  implied covenant of good faith and fair dealing.

5      Lastly, Starr's request to deny Plaintiff leave to amend the Complaint is denied as moot.

6      **IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss **IS DENIED IN ITS**

7  **ENTIRETY** without prejudice.

8      _____

9      November 30, 2020.

10  Respectfully submitted,

11  WOLF, RIFKIN, SHAPIRO, SCHULMAN &        Approved/disapproved as to form
    RABKIN, LLP
12                                            Approved/disapproved as to content
      _/s/ Don Springmeyer_
13  Don Springmeyer, Esq. (NSB No. 1021)      FORAN GLENNON PALANDECH PONZI &
    Bradley Schrager, Esq. (NSB No. 10217)    RUDLOFF PC
14  Royi Moas, Esq. (NSB No. 10686)
    3556 E. Russell Road, 2nd Floor           By: _____
15  Las Vegas, Nevada 89120                       Lee H. Gorlin (NSB No. 13879)
    Telephone: (702) 341-5200                     2200 Paseo Verde Parkway, Suite 280
16  Facsimile:  (702) 341-5300                    Henderson, NV 89502
    dspringmeyer@wrslawyers.com                   Telephone: (702) 827-1510
17  bschrager@wrslawyers.com                      Facsimile: (312) 863-5099
    rmoas@wrslawyers.com                          lgorlin@fgppr.com
18
    Robin L. Cohen, Esq. (*pro hac vice to be    Amy M. Samberg (NSB No. 10212)
19  submitted*)                                   400 East Van Buren St., Suite 550
    Marc T. Ladd, Esq. (*admitted pro hac vice*)  Phoenix, AZ 85004
20  MCKOOL SMITH, P.C.                            Telephone: (602) 926-9880
    One Manhattan West                            Facsimile: (312) 863-5099
21  395 9th Avenue, 50th Floor                    asamberg@fgppr.com
    New York, New York 10001
22  Tel:  (212) 402-9400                         *Attorneys for Starr Surplus Lines Insurance*
    Fax:  (212) 402-9444                         *Company*
23  rcohen@mckoolsmith.com
    mladd@mckoolsmith.com
24  *Attorneys for Plaintiff JGB Vegas Retail*
    *Lessee, LLC*
25

26

27

28

-7-

019

# Exhibit D

*P.F. Chang's China Bistro, Inc. v. Certain Underwriters at Lloyd's of London,*
No. 20STCV17169 (Cal. Super. Ct. Feb. 4, 2021)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 55

20STCV17169                                                      February 4, 2021
**P.F. CHANG'S CHINA BISTRO, INC. vs CERTAIN**                        8:30 AM
**UNDERWRITERS AT LLOYD'S OF LONDON**

Judge: Honorable Malcolm Mackey           CSR: Michelle Cooper #13572
Judicial Assistant: S. Ontiveros          ERM: None
Courtroom Assistant: M Kinney             Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Heather W Habes (Telephonic); Jeffrey Alan Kiburtz (Telephonic); Reynold

Lloyd Siemens (Telephonic)

For Defendant(s): Jayme C Long (X) and Alanna Clair & Shari L. Klevens (x) appearing  Pro

Hac Vice on Court Connect (Telephonic); Brendan V Mullan (Telephonic); Justin Reade Sarno

(Telephonic)

**NATURE OF PROCEEDINGS:** Hearing on Motion for Judgment on the Pleadings

Pursuant to Government Code sections 68086, 70044, and California Rules of Court, rule 2.956, Michelle Cooper #13572, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

Matter is called for hearing.

The Court has read and considered all documents filed hereto regarding the above-captioned Motion. Counsel have been provided a copy of the court's written tentative ruling by email. Counsel is given the opportunity to argue.

After hearing from the parties, the Court adopts its tentative ruling set forth below as the Final Ruling:

The motion is denied.

The complainants' interpretation of policy provisions is reasonable, and supports denying the motion for judgment on the pleadings, as exemplified by the following excerpts:

53. On information and belief, American Guarantee contends that its promise to pay for, and as a result of, "physical loss of or damage to" qualifying property is strictly limited to property that

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 55

**20STCV17169**                                                        February 4, 2021
**P.F. CHANG'S CHINA BISTRO, INC. vs CERTAIN**                             8:30 AM
**UNDERWRITERS AT LLOYD'S OF LONDON**

Judge: Honorable Malcolm Mackey            CSR: Michelle Cooper #13572
Judicial Assistant: S. Ontiveros           ERM: None
Courtroom Assistant: M Kinney              Deputy Sheriff: None

undergoes a tangible, permanent alteration or transformation as a result of an external force, as might be the case when a fire burns a piece of wood. But the coverage provided under the Property Policy is not so narrowly circumscribed: its coverage expressly extends to any "physical loss of . . . property" unless excluded, including the inability to access or use all or a portion of qualifying physical premises.

54. The requirement of "physical loss of or damage to" property has been met in one or more ways, including by virtue of the "physical loss of or damage to" P.F. Chang's dining rooms or other qualifying property caused by (i) the actual or potential presence of virus in the air (whether in droplet nuclei, aerosols, droplets, or otherwise) in the vicinity of P.F. Chang's restaurants or other qualifying buildings; (ii) the necessity of modifying physical behaviors through the use of social distancing, avoiding confined indoor spaces, and/or not congregating in the same physical area as others, whether such practices were mandated by government order or not, in order to reduce or minimize the potential for viral transmission;5 (iii) government orders requiring that physical spaces such as P.F. Chang's dining rooms be shut-down; and/or (iv) the need to mitigate the threat or actual physical presence of virus on door-handles, tables, silverware, surfaces, in heating and air conditioning systems and any other of the multitude of places virus has or could be found.

(First Amended Complaint, ¶¶ 53- 54.)

Courts defer to plaintiffs' reasonable interpretations of contracts, in ruling upon motions addressing pleading insufficiencies. Performance Plastering v. Richmond American Homes of Cal., Inc. (2007) 153 Cal.App.4th 659, 672 (lack of essential terms in agreement not properly resolved on demurrer where related to complainants' reasonable interpretations); Aragon-Haas v. Family Security Services, Inc. (1991) 231 Cal.App.3d 232, 239; Davies v. Sallie Mae, Inc. (2008) 168 Cal. App. 4th 1086, 1091. "On a demurrer, the court must consider the sufficiency of the allegations, including any parol evidence allegations, to determine whether the contract is reasonably susceptible to the plaintiff's alleged interpretation." George v. Automobile Club of So. Cal. (2011) 201 Cal.App.4th 1112, 1128. A motion for judgment on the pleadings involves the same type of procedures that apply to a general demurrer. Richardson-Tunnell v. School Ins. Program for Employees (2007) 157 Cal.App. 4th 1056, 1061; Burnett v. Chimney Sweep (2004) 123 Cal. App. 4th 1057, 1064.

Most cited authority does not control here. California courts are not bound to follow decisions of lower federal courts. People v. Sup. Ct. (2002) 103 Cal. App. 4th 409, 431. A treatise is "not binding law." Heller v. Pillsbury Madison & Sutro (1996) 50 Cal.App.4th 1367, 1393. State trial

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 55

**20STCV17169**                                          February 4, 2021
**P.F. CHANG'S CHINA BISTRO, INC. vs CERTAIN**                      8:30 AM
**UNDERWRITERS AT LLOYD'S OF LONDON**

Judge: Honorable Malcolm Mackey          CSR: Michelle Cooper #13572
Judicial Assistant: S. Ontiveros          ERM: None
Courtroom Assistant: M Kinney             Deputy Sheriff: None

---

court rulings are not binding precedent. E.g., Schachter v. Citigroup, Inc. (2005) 126 Cal.App.4th 726, 738.

Notice is waived.

# Exhibit E

*Cherokee Nation v. Lexington Ins. Co.,*
No. CV-2020-150 (Okla. Dist. Ct. Jan. 14, 2021)

**IN THE DISTRICT COURT OF CHEROKEE COUNTY**
**STATE OF OKLAHOMA**

CHEROKEE NATION, CHEROKEE )
NATION BUSINESSES, LLC, & )
CHEROKEE NATION )
ENTERTAINMENT, LLC )
) Case No. CV-20-150
)
Plaintiff, ) Hon. Douglas Kirkley
v. )
)
LEXINGTON INSURANCE COMPANY, et al. )
)
Defendants. )
)

---

**COURT'S ORDER AND OPINION AS TO PLAINTIFF CHEROKEE NATION, CHEROKEE NATION BUSINESSES, LLC, & CHEROKEE NATION ENTERTAINMENT, LLC'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT ON BUSINESS INTERRUPTION COVERAGE**
(Filed on **1/29**, 2021)

---

On December 28, 2020, this matter came on for consideration of Plaintiff Cherokee Nation, Cherokee Nation Businesses, LLC, & Cherokee Nation Entertainment, LLC's (collectively the "Nation") First Motion for Partial Summary on Business Interruption Coverage (the "Motion"). The Court reviewed the briefs, heard the argument of counsel, and after taking the matter under advisement, the Court finds and orders:

Since late 2019,[1] the United States has endured the COVID-19 Pandemic (the "Pandemic"). In response, the Nation, like many other businesses in the State of Oklahoma, temporarily closed its business operations on March 16, 2020 to implement mitigation protocols and modifications to allow its businesses to operate safely. In July 2020, the Nation asked the Court to interpret the Tribal Property Insurance Program ("TPIP") Policy that provided business interruption insurance to the Nation's covered properties from July 1, 2019, through July 1, 2020. Defendant Insurers[2] responded in September 2020, arguing that that the Nation did not suffer *direct physical loss or damage* as contemplated by the TPIP Policy and that various exclusions bar coverage. The Court, having read the TPIP Policy to interpret its plain and ordinary meaning, now finds for the Nation, **GRANTS** the Nation's First Motion for Partial Summary Judgment on

---

[1] *U.S. Covid Cases Found as Early as December 2019, Says Study,* BLOOMBERG NEWS (Dec. 1, 2020) https://www.bloomberg.com/news/articles/2020-12-01/covid-infections-found-in-u-s-in-2019-weeks-before-china-cases.

[2] Defendant Insurers refers to all Defendants in the above-styled case.

Business Interruption Coverage and **DENIES** Defendant Insurers' request for Summary Judgment.[3]

## FINDINGS OF FACT

Both parties request the Court interpret the TPIP Policy and issue summary judgment in their favor.[4] The parties also assert—and the Court agrees—that the interpretation of insurance contracts is a question of law;[5] consequently, there are no facts that would prevent the Court from determining coverage.[6] Based on review of the briefs, the evidence submitted, and the argument of the parties, the Court finds the following undisputed material facts for purposes of summary judgment:

1.  The Nation purchased the Tribal Property Insurance Property Policy (Policy Nos. 017471589/06 (Dec 37) 9109; (Dec 31) 9497; an (Dec 15) 9110) with all-risk business interruption coverage from July 1, 2019 through July 1, 2020. The Nation's Motion at 3 (Material Fact No. 1; *Ex.* 5 – the TPIP Policy [hereinafter also simply referenced to as the "TPIP" or "TPIP Policy"]); Defendant Insurers' Opposition to the Motion at 3 (Response to Material Fact No. 1 and Additional Material Fact Nos. 1-7).

2.  Defendant Insurers issued several excess policies which incorporated the language of the TPIP Policy but also included various exclusions to coverage provided by the TPIP Policy.[7]

---

[3] Because the question before the Court is the question of coverage provided by the TPIP Policy's business interruption provision, the Court does not make a determination concerning damages and Defendant Insurers' status as excess carriers is not relevant. The TPIP Policy is attached as exhibit 5 to the Nation's Motion.

[4] The Nation's Motion at 4; Defendant Insurers' Opposition to the Nation's Motion at 20.

[5] The Nation's Motion at 3 (*citing e.g., Oklahoma Attorneys Mut. Ins. Co. v. Cox*, 2019 OK CIV APP 25, ¶ 8 ("The interpretation of an insurance policy, with its exclusions, is a question of law.")); Defendant Insurers' Opposition to the Nation's Motion at 6-7 (*citing May v. Mid-Century Ins. Co*, 2006 OK 100, ¶ 22).

[6] Because this is not a motion to compel, the Court has not seen Defendant Insurers' discovery requests or the Nation's responses, and consequently the Court cannot speak to the substance of Defendant Insurers' discovery dispute claim, except to say they are not relevant to the matter at hand. As a preliminary matter, the Court finds that if Defendant Insurers had specific material facts it could dispute with additional discovery, they should have stated as much and taken advantage of the right to file an affidavit granted to them pursuant to District Court Rule 13(d) and 12 O.S. § 2056(f). *McClain v. Riverview Vill., Inc.*, 2011 OK CIV APP 57, ¶ 7; *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007); *Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1376 (10th Cir. 1988). Having waived that right—after being advised by the Nation of that procedure and filing a sur-reply where such an affidavit could have been attached—the Court will not do the work for Defendant Insurers to figure out what facts could, in theory, or possibly, be disputed.

[7] For purposes of summary judgment, the Court has taken Defendant Insurers at their word and assumed the various excess policies' exclusions are binding on the TPIP Policy. The Nation asserted that various fact-based defenses, such as the reasonable expectation doctrine and lack of

Defendant Insurers' Opposition the Nation's Motion at 3 (Response to Material Fact No. 1 and Additional Material Fact No. 1).

3.  The Nation closed its covered properties due to the Pandemic. The Nation's Motion at 3-4, 11-13 (Material Fact No. 2; *Ex. 3* – Principal Chief Chuck Hoskins Executive Order); Defendant Insurers' Opposition to the Nation's Motion at 5-6 (Additional Material Fact Nos. 10-12); K. Querry, *Cherokee Nation Suspends Casino, Hotel Operations*, KFOR (Mar. 16, 2020), https://kfor.com/news/coronavirus/cherokee-nation-suspends-casino-hotel-operations/.[8]

4.  While closed, the Nation repaired its covered property by implementing various mitigation protocols and modifications, such as installing acrylic barriers and sanitation stations, staggering seating and gaming machines, replacing air filters, etc. Defendant Insurers' Opposition to the Nation's Motion at 6 (Additional Material Fact Nos. 12 & 13); The Nation's Reply to Defendant Insurers' Opposition to the Nation's Motion for Partial Summary Judgment on Business Interruption Coverage (the "Reply") at 12-13 (*See also Ex. 8*, D. Sean Rowley, *Cherokee Nation Businesses gives reopening date for its casinos*, CHEROKEE PHOENIX (June 5, 2020); *and Ex. 9*, Cherokee Nation Businesses, Responsible Hospitality at 10).

5.  In June 2020, the Nation reopened its covered properties. Defendant Insurers' Opposition to the Nation's Motion at 6 (Additional Material Fact No. 12); The Nation's Reply at 10-11 (*See also Ex. 8*, D. Sean Rowley, *Cherokee Nation Businesses gives reopening date for its casinos*, CHEROKEE PHOENIX (June 5, 2020); *and see generally Ex. 9*, Cherokee Nation Businesses, Responsible Hospitality).

6.  The Pandemic is a fortuitous event. The Nation's Motion at 3 (Material Fact No. 3); *Texas E. Transmission Corp Texas E. Transmission Corp. v. Marine Office–Appleton & Cox Corp.*, 579 F.2d 561, 564 (10th Cir. 1978) (interpreting Oklahoma insurance law).[9]

---

consideration, bar application of the individual excess exclusions to its claim and reserved those arguments. Because the Court grants the Nation's First Motion for Partial Summary Judgment on Business Interruption Coverage for the reasons stated herein, those arguments are now moot.

[8] The Court also takes judicial notice of Findings of Fact Nos. 3-5 provided herein, as it is common knowledge within the territorial jurisdiction of the Court that the Nation closed its businesses due to the Pandemic in March 2020, implemented safety protocols and modifications and has since reopened. 12 O.S. § 2202.

[9] As the Tenth Circuit observed when interpreting Oklahoma law:

> A fortuitous event . . . is an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, as the loss of a vessel, provided that the fact is unknown to the parties.

3

## CONCLUSIONS OF LAW

### I.    THE NATION SUFFERED A COVERED LOSS

The central issue before the Court is whether the Nation's businesses closures due to the Pandemic constitute a covered loss under the TPIP Policy.[10] The TPIP Policy provides coverage for *all risk of direct physical loss or damage.* **Defendant Insurers did not define that important phrase within the TPIP Policy.** The Nation argues that *direct physical loss* occurs when covered property is "rendered unusable for its intended purpose."[11] Defendant Insurers say that *direct physical loss or damage* is a phrase-of-art, which means there must be "distinct, demonstrable, physical alteration to the property."[12] Though this appears to present a first-impression question in Oklahoma, the interpretation of "direct physical loss" is something that courts around the country have struggled with for some time – and that is subject to particularly intense, widespread litigation now in light of the numerous other business closures precipitated by the current Pandemic. Other courts wrestling with this question have come down on both sides.

The Court must read the TPIP policy "as a whole giving the language its ordinary and plain meaning." *Oklahoma Sch. Risk Mgmt. Tr.,* 2019 OK 3, ¶ 22. But where an insurance provision "is susceptible to two interpretations from the standpoint of a reasonably prudent layperson, then the language is ambiguous." *Id.* In such a circumstance: "the court should construe the terms against the insurer and in favor of the insured." *Oklahoma Attorneys Mut. Ins. Co. v. Cox,* 2019 OK CIV APP 25, ¶ 9; *Serra v. Estate of Broughton,* 2015 OK 82, ¶ 10 (When an insurance term or phrase is ambiguous, "words of inclusion will be construed liberally in the insured's favor, and words of exclusion will be construed strictly.").

With these cannons in mind, the Court agrees with the Nation that the central issue—the interpretation of *direct physical loss or damage*—could have been preempted if Defendant Insurers would have simply defined the phrase within the TPIP Policy. Carriers have utilized the phrase *direct physical loss* for over fifty (50) years and courts have begged carriers to define the phrase to avoid the precise issue before the Court now. *E.g., W. Fire Ins. Co. v. First Presbyterian Church,*

---

*Texas E. Transmission Corp.,* 579 F.2d at 564 (omission in original). The Pandemic is an event that neither the Nation nor Defendant Insurers were aware would occur in 2020, rendering it a fortuitous event.

[10] Oklahoma law is clear: under an all-risk policy the Nation must only show (1) it suffered a covered loss and (2) the loss was fortuitous. *Oklahoma Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.,* 2019 OK 3, ¶ 16 ("An 'all-risk' policy [covers] a loss when caused by any fortuitous peril not specifically excluded by the policy."); *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 564 (10th Cir. 1978). It appears the standard for all-risk policies is intentionally a low bar for the Nation to clear because it is "a special type of insurance extending to risks not usually contemplated." *Texas E. Transmission Corp.,* 579 F.2d at 564; *Pillsbury Co. v. Underwriters at Lloyd's, London,* 705 F. Supp. 1396, 1399 (D. Minn. 1989) (All-risk policies were "developed to protect the insured in cases where loss or damage to property is difficult or impossible to explain.").

[11] The Nation's Motion at 8-12.

[12] Defendant Insurers' Opposition to the Nation's Motion at 9-13.

165 Colo. 34, 40–41, 437 P.2d 52, 56 (1968) ("Despite the fact that a 'dwelling building' might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected. Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner."); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709–10 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013). Despite these pleas and the known confusion surrounding the phrase "direct physical loss," Defendant Insurers made no attempt to clarify or define that phrase within the TPIP policy to avoid the Nation's interpretation that losses such as the closure of a business in response to the Pandemic would be covered—at least, not until it was too late.

The day after the Chickasaw Nation and Cherokee Nation of Oklahoma filed this same action under this same policy, Defendant Insurers added a new Communicable Disease exclusion to the TPIP Policy that preempted coverage due to the fear or threat of viruses. This action on the part of the Defendant Insurers can mean one of two things. Either the exclusion was added to provide clarity for Defendants' interpretation—*i.e.*, that Pandemic-related closures like the one at issue here are *not* covered—which underscores the confusion surrounding the existing policy language and the conclusion that the TPIP is ambiguous. Or the exclusion was added because the Nation's interpretation is correct—*i.e.*, that Pandemic-related closures like the one at issue here *are* covered—and Defendant Insurers needed to create a truly new exclusion in order to avoid liability for such claims. In either event—even assuming the Defendant Insurer's interpretation of the existing language is reasonable—Oklahoma law would require the Court to adopt the Nation's interpretation.

This is the same result reached in *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Company*. No. 2:20-CV-265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020). There, the court compared the same interpretations of *direct physical loss or damage* forwarded by the Nation and Defendant Insurers respectively to determine coverage resulting from the Pandemic. The Eastern District of Virginia—invoking the same cannons of construction utilized in Oklahoma—reviewed many of the cases cited to the Court and reached the same conclusion:

> Therefore, given the spectrum of accepted interpretations, the Court interprets the phrase "direct physical loss" in the Policy in this case most favorably to the insured to grant more coverage. *See Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, at 81 (2009) ("[I]f disputed policy language is ambiguous ... we construe the language in favor of coverage and against the insurer."). Based on the case law, the Court finds that it is plausible that a fortuitous "direct physical loss" could mean that the property is uninhabitable, inaccessible, or dangerous to use because of intangible, or non-structural, sources. *See US Airways, Inc. v. Commonwealth Ins. Co.*, 2004 WL 1094684, at *5 (Va. Cir. Ct. May 14, 2004) (holding FAA order grounding flights at Reagan National Airport could constitute direct physical loss when "nothing in the Policy ... requires that [there] be damage to [the insured's] property."). Here, while the Light Stream Spa was not structurally damaged, it is plausible that Plaintiff's experienced a direct physical loss when the property was deemed uninhabitable, inaccessible, and dangerous to use by the Executive Orders because of its high risk for spreading COVID-19, an invisible but highly lethal virus. That is, the facts of this case are similar those where courts found that asbestos, ammonia, odor from methamphetamine lab, or toxic gasses from drywall,

5

029

which caused properties uninhabitable, inaccessible, and dangerous to use, constituted a direct physical loss.

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-CV-265, 2020 WL 7249624, at *8 (E.D. Va. Dec. 9, 2020). Defendant Insurers could have avoided this outcome if they had defined *direct physical loss or damage* as they (and others before them) have argued it should be interpreted. *See infra* fn. 17. But Defendants did not do so.

As explained in more detail below, the Court finds the Nation's interpretation of the TPIP is reasonable. Thus, even if the Defendant Insurers interpretation was also reasonable, the Court would be left with two competing interpretations—a result commensurate with the conclusions of other courts around the country. Under Oklahoma law, such patent ambiguity must be interpreted in the Nation's favor. *Oklahoma Attorneys Mut. Ins. Co. v. Cox*, 2019 OK CIV APP 25, ¶ 9; *Serra v. Estate of Broughton*, 2015 OK 82, ¶ 10. Ultimately, however, the Court also finds that Defendant's interpretation of "direct physical loss" is unreasonable, and the Nation's interpretation is correct. Under either rationale, the Nation has a covered loss.

### A.   *The Nation presented the only reasonable interpretation.*

The Court finds that the Nation's interpretation is the correct interpretation and Defendant Insurers have forwarded an unreasonable interpretation of *direct physical loss or damage* in the context of the TPIP Policy.

First, the Nation cites to several cases where *direct physical loss* has been interpreted to include property rendered unusable for its intended purpose. *E.g., Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (1968); *Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-CV-01932-CL, 2016 WL 3267247, at *7-9 (D. Or. June 7, 2016); *see also* the Nation's Motion at fn. 11. This includes several cases evaluating closures due to the Pandemic. *Harrison v. Optical Services, USA et al.*, BER-L-3681-20, at 27 (Bergen Cnty., N.J. Aug. 13, 2020); *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *5 (W.D. Mo. Aug. 12, 2020); *Elegant Massage, LLC*, No. 2:20-CV-265, 2020 WL 7249624, at *8 (E.D. Va. Dec. 9, 2020). Defendant Insurers characterize the Nation's argument as coverage for all loss of use, regardless of the terms in the TPIP Policy. But this argument appears to be misplaced, as the Nation's interpretation accounts for direct physical loss through the closure itself, as another court observed:

> As an initial matter, the Policies do not define the terms 'direct,' 'physical loss,' or 'physical damage.' The Court must therefore turn first to the ordinary meaning of those terms. Merriam-Webster defines 'direct,' when used as an adjective, as 'characterized by close logical, causal, or consequential relationship,' as 'stemming immediately from a source,' or as 'proceeding from one point to another in time or space without deviation or interruption.' *Direct*, Merriam-Webster (Online ed. 2020). Merriam-Webster defines 'physical' as relating to 'material things' that are 'perceptible especially through the senses.' *Physical*, Merriam-Webster (Online ed. 2020). The term is also defined in a way that is tied to the body: 'of or relating to the body.' *Id.* Webster's Third New International Dictionary defines physical as 'of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary.' Physical, Webster's Third New International Dictionary (2020). The

6

definition from Black's Law Dictionary comports: 'Of, relating to, or involving material things; pertaining to real, tangible objects.' *Physical*, Black's Law Dictionary (11th ed. 2019). Finally, 'loss' is defined as 'the act of losing possession,' 'the harm of privation resulting from loss or separation,' or the 'failure to gain, win, obtain, or utilize.' *Loss*, Merriam-Webster (Online ed. 2020). Another dictionary defines the term as 'the state of being deprived of or of being without something that one has had.' *Loss*, Random House Unabridged Dictionary (Online ed. 2020). *Applying these definitions reveals that the ordinary meaning of the phrase 'direct physical loss' includes the inability to utilize or possess something in the real, material, or bodily world, resulting from a given cause without the intervention of other conditions.*

*E.g., North State Deli, LLC, et al. v. Cincinnati Insurance Co., et al.*, 20-CVS-02569 (Durham Cnty., N.C. Oct. 9, 2020) (emphasis added) (Granting plaintiff-insured summary judgment for business interruption coverage due to the COVID Pandemic). In fact, it was undisputed that the Nation could not physically utilize its property because of the Pandemic.

Surrounding provisions of the TPIP Policy also demonstrate that requiring a physical alteration of the property is inconsistent with the policy before the Court. For example, several exclusions within the TPIP Policy exclude losses that do not require physical alteration to the property, such as infidelity, loss of market, and inventory shortage. *TPIP Policy* at 24-25. There is simply no explanation as to why Defendant Insurers would exclude causes of loss that would not meet the interpretation of *direct physical loss* regardless.

The same is true of the new Communicable Disease exclusion that was added to the TPIP policy language *one day after* other tribes filed the same declaratory action concerning the same policy as the Nation:

---

**ENDORSEMENT 5**

**COMMUNICABLE DISEASE EXCLUSION**

1.    This policy, subject to all applicable terms, conditions and exclusions, covers losses attributable to direct physical loss or physical damage occurring during the period of insurance. Consequently and notwithstanding any other provision of this policy to the contrary, this policy does not insure any loss, damage, claim, cost, expense or other sum, directly or indirectly arising out of, attributable to, or occurring concurrently or in any sequence with a Communicable Disease or the fear or threat (whether actual or perceived) of a Communicable Disease.

---

The Nation's Motion (*Ex. 11* – New TPIP Policy Endorsement 5 (Mar. 25, 2020) ("Communicable Disease Exclusions")).[13] This new exclusion concerns the "fear or threat (whether actual or

---

[13] The Court would find the Nation's interpretation reasonable even in the absence of this exclusion. The Court considers this exclusion and the fact that it was added one day after considering the "patent ambiguity" created by Defendant Insurers failure to define *direct physical*

perceived) of a Communicable Disease." If pandemics as a cause of loss were clearly not covered by the 2019-2020 TPIP Policy, then the new exclusion would be superfluous. [14] *Compare Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶ 9 ("[I]t is presumed, unless a contrary intention appears, that the parties intended that the renewal policy cover the same terms, conditions, and exceptions as the original policy.") *with Orren v. Phoenix Ins. Co.*, 288 Minn. 225, 229-30 (1970) ("Moreover, in our opinion, the change in language made in the revised policy persuasively illustrates the ambiguity."). As discussed above, the addition of the exclusion only makes sense where the Nation's interpretation applies and pandemics can constitute a covered cause of loss.

The "all risk" nature of the TPIP policy also cuts against Defendant Insurers' interpretation. First, the true triggering language of coverage under the TPIP Policy is *all risk of direct physical loss or damage*. As the Nation highlighted within its Motion and Reply, "*all risk of*" expands coverage to include losses from anticipated harms or danger. The Nation's Motion at 14-15; The Nation's Reply at 10. Indeed, the Nation notes that the TPIP Policy provides coverage specifically for *imminent* physical loss:

> In case of actual or *imminent physical loss* or damage of the type insured against by this Policy, the expenses incurred by the Named Insured in taking reasonable and necessary actions for the temporary protection and preservation of property insured hereunder shall be added to the total physical loss or damage otherwise recoverable under the Policy and be subject to the applicable deductible and without increase in the limit provisions contained in this Policy.

*TPIP Policy* at 13 (Protection and Preservation of Property) (emphasis added). Common sense dictates that the Policy cannot require the insured to demonstrate physical alteration to the property while also promising coverage for anticipated loss as well. This is consistent with the only Oklahoma law available on the issue as well, as the Oklahoma Court of Civil Appeals has stated that "risks of direct physical loss" includes "anticipated damage" to property. *Gutkowski v. Oklahoma Farmers Union Mut. Ins. Co.*, 2008 OK CIV APP 8, ¶ 11. Defendant Insurers' failed to dispute the Nation's interpretation of *all risk of* and did not submit their own interpretation.

Defendant Insurers' interpretation of *direct physical loss or damage* also fails to abide by Oklahoma law for construing insurance policies—specifically, the rule against superfluity. "The rule of construction is that some particular operation, effect, and meaning must be assigned to each sentence, phrase, and word used, and when this may fairly and properly be done, no part of the language used can be rejected as superfluous or unmeaning." *Kingkade v. Cont'l Cas. Co.*, 1912 OK 807, 35 Okla. 99, 128 P. 683, 685 (internal quotation omitted). Applying this foundational

---

*loss or damage. Hensley v. State Farm Fire & Cas. Co.*, 2017 OK 57, ¶ 36. "The presence of patent ambiguity allows for the conduct of the parties to be used to determine the meaning of the contract." *Id.*

[14] Defendant Hallmark utilizes virtually identical language but goes one step further to specifically identify pandemics in its new "Pandemic and Epidemic Exclusion," further illustrating the purpose of these recent efforts. *See* the Nation's Reply to Defendant Hallmark Specialty Insurance Company's Supplemental Opposition to Nation's Motion for Partials Summary Judgment on Business Interruption Coverage at 6; *see supra* fn. 13.

canon to the TPIP Policy, the Court would entertain that *direct physical damage* may be shown by "distinct, demonstrable, physical alteration to the property;" however, *direct physical loss* must have a distinct meaning. Because the policy provides for *direct physical loss or damage*, the Court must place value in the disjunction *"or." See Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at \*5 (W.D. Mo. Aug. 12, 2020) (citing *Nautilus Grp., Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at \* 7 (W.D. Wash. Mar. 8, 2012) ("if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous")). The word *loss* is divested of any meaning under Defendant Insurers' interpretation. Tellingly, Defendant Insurers never explain the difference between *direct physical loss* and *direct physical damage* under their interpretation. Therefore, the TPIP Policy must contemplate two categories of covered loss: *direct physical damage*, which may exist under Defendant Insurers' interpretation; and *direct physical loss*, which includes the Nation's interpretation. The Court finds additional support for this interpretation because the policy uses *physical damage* and *physical loss* separately throughout its other provisions, demonstrating the phrases have distinct meanings.[15] The Nation's Motion at 7 (citing the TPIP Policy at 10, 11, 20, 23); *Oklahoma Sch. Risk Mgmt. Tr.*, 2019 OK 3, ¶ 24 ("[W]hen an insurer creates specificity in one clause of a policy and then omits it in a similar context, the omission is considered purposeful and should be given meaning.").[16] Looking at the plain and ordinary meaning of the TPIP Policy, the Court is convinced that the Nation's interpretation gives meaning to each and every word in the TPIP Policy and is the only reasonable interpretation before the Court.

### B.   *Goodwill and the other ISO supplemental cases are distinguishable*

When the TPIP Policy is "read as a whole" as required by the Court, it is clear that neither *Goodwill* nor the other Insurance Services Office ("ISO") policy cases listed in Defendant Insurers' Notices of Supplemental Authority are applicable. *Oklahoma Sch. Risk Mgmt.* Tr., 2019 OK 3, ¶ 22. Simply put, the policy language is not the same. *See Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, No. CV-20-511-R at \*1 (W.D. Okla. Nov. 9, 2020).

The policy at issue in *Goodwill* and the vast majority of cases relied upon by Defendant Insurers utilize standardized ISO form policy language. Hearing Tr. 33:3-17 (Oct. 27, 2020) (A. Vance); *see e.g., Goodwill Indus. of Cent. Oklahoma, Inc.*, No. CV-20-511-R, at \*1; *see also Colony Ins. Co. v. Jackson*, No. 09-CV-780-TCK-TLW, 2011 WL 2118728, at \*3 (N.D. Okla. May 27, 2011) ("ISO is a national insurance policy drafting organization that develops standard

---

[15] Defendant Insurers rely on the Period of Restoration provision of the TPIP Policy to support its interpretation, but as the Nation showed, the provision relates to the length of time coverage is afforded; it is not a trigger of coverage. The Nation's Reply at 9-11. Moreover, the webpages provided in Defendant Insurers' additional facts demonstrated that the Nation made repairs as contemplated by the Period of Restoration provision. *Id.*

[16] It is also notable that since at least 1968, several courts have rejected Defendant Insurers' interpretation and instructed carriers to clearly limit *direct physical loss or damage* within their policies for it to have the meaning Defendants advance here. *E.g., W. Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 40–41, 437 P.2d 52, 56 (1968); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709–10 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013). Defendant Insurers failed to do so.

policy forms and files them with each state's insurance regulators. *See French v. Assurance Co. of Am.*, 448 F.3d 693, 697 & n. 1 (4th Cir.2006)."). The TPIP Policy, however, does not utilize the same language, definitions, or provisions as the ISO form policies. First and foremost, the triggering language within the ISO Policies and the TPIP Policy is simply not the same. Courts cited by Defendant Insurers have assigned special meaning to "direct physical loss *of property*" in the ISO Policies. *E.g., Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-03213-JST, 2020 WL 5525171, at *3-4 (N.D. Cal. Sept. 14, 2020) (finding "loss of" requires property be permanently misplaced or unrecoverable); *see also Karen Trihn, DDS, Inc. v. State Farm Gen. Ins. Co.*, No. 5:20-CV-04265-BLF, 2020 WL 7696080, at *4 (N.D. Cal. Dec. 28, 2020) ("In other words, the term 'loss of' contemplates that the property is unrecoverable."). But "*all risk of direct physical loss*"—the triggering language within the TPIP Policy—neither has "property" as the object of the clause nor includes "of" modifying the scope of *loss*. And as previously discussed, the Nation dedicated substantial argument to demonstrate that "all risk of" within the triggering language of the TPIP broadens the scope of coverage contemplated therein.

Further, the *Goodwill* court noted numerous other provisions in the ISO policies that are absent from the TPIP Policy. The *Goodwill* policy required "actual loss" due to a "suspension" of "operation," but such words and requirements are absent from the TPIP Policy. *See Goodwill Indus. of Cent. Oklahoma, Inc.*, No. CV-20-511-R, at *1-2. Meanwhile, the TPIP Policy provides coverage for "imminent loss." *See supra* at 8. To interpret these policies the same would render those different words, definitions, and provisions meaningless, which this Court will not do. *Supra Kingkade*, 1912 OK 807.

Defendant Insurers had the option to adopt ISO language, which the vast majority of carriers in cases cited by Defendant Insurers did; however, the Tribal Property Insurance Program Policy was clearly drafted with more expansive language, presumptively in the hopes of cornering the tribal casino market. But regardless of the motivation behind the chosen language, the triggering language of the TPIP Policy (particularly when interpreted in light of other provisions therein) plainly covers more than the ISO Policies. Accordingly, the *Goodwill* case and other ISO authority is distinguishable and simply not persuasive to the Court.

*   *   *

For the foregoing reasons, the Court finds that the Nation's is the only reasonable interpretation of the TPIP Policy. However, even assuming Defendant Insurers' interpretation was also reasonable, the result would be a patent ambiguity, which Oklahoma law requires be resolved in favor of coverage. Either way, the Nation's reading would control.

## II.    THE EXCLUSIONS DO NOT APPLY

"[I]f an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose." *First United Methodist Church of Stillwater, Inc. v. Philadelphia Indem. Ins. Co.*, 2016 OK CIV APP 59, ¶ 34. "[I]n cases of doubt . . . words of exclusion are strictly construed against the insurer." *Max True Plastering Co.*, 1996 OK 28, 912

P.2d at 865.[17] Utilizing these canons, the Court finds the various exclusions forwarded by Defendant Insurers do not clearly and distinctly apply to the Pandemic as a cause of loss.

To be clear, the only loss shown to the Court was the Pandemic. And a pandemic is a loss distinct from a virus; regardless of whether there was definitive proof that the COVID-19 virus *was* or *was not* on the Nation's property, the property was still rendered useless due to the reasonable precautionary measures implemented in response to the Pandemic. *See Friends of Danny DeVito*, 227 A.3d 872 (Pa. 2020). Thus, because actual presence of the virus was not relevant to the closure of Nation's properties, it is not relevant to the Court's determination that *direct physical loss* occurred. The Nation's Reply at 13 (quoting *Urogynecology Specialist of Florida LLC, v. Sentinel Insurance Company, Ltd.*, 6:20-01174-ACC-EJK (Sep. 24, 2020)).

Turning to the exclusions provided, the Court takes "all inferences and conclusions to be drawn from the evidentiary materials . . . in the light most favorable to" Defendant Insurers. *See Carmichael v. Beller*, 1996 OK 48, 914 P .2d 1051, 1053. The Court assumes, for purposes of summary judgment, that the exclusions included within the TPIP Policy and various excess policies are valid additions to the TPIP Policy.[18] But even with that assumption, the Court finds that Defendant Insurers failed to clearly and distinctly exclude the Nation's loss.

The Nation demonstrated through various examples that insurance carriers are aware of the risk of pandemics as a peril, regularly exclude them with clear and distinct language, but that these Defendant Insurers failed to do so here. The Nation's Reply to Defendant Hallmark Reply to Defendant Hallmark Specialty Insurance Company's Supplemental Opposition to Nation's Motion for Partial Summary Judgment on Business Interruption Coverage at 6 [hereafter the "Nation's Reply to Hallmark"]; *see also Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016). For example, in 2008 Lloyds published *Pandemic: Potential Insurance Impacts*, where is stated business interruption coverage needed to be carefully drafted by carriers because a "pandemic is inevitable." The Nation's Reply at 17, fn. 27 (*Ex. 10*). That was a known risk to these Defendant Insurers as well:

---

[17] For all-risk policies specifically, "the insurer has a burden to show the loss is excluded by the policy." *Oklahoma Sch. Risk Mgmt. Tr.*, 2019 OK 3, ¶ 16. Indeed, it is the carrier that must prove a particular and excluded cause of loss is the source of the insured's claim to bar coverage under an all-risk policy. *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 564–65 (10th Cir. 1978). Alternatively stated, the carrier must show that the language itself clearly and distinctly excludes the cause of loss, and separately that the excluded cause of loss is the source of the insured's claim.

[18] Again, the Court does not address the fact-based defenses raised by the Nation, as those arguments are rendered moot by the Court's finding that the TPIP Policy's exclusions lack that clear and distinct language to make them applicable to the Nation's claim. *See supra* fn. 3.

*Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016) (Demonstrating Defendant Liberty Mutual previously excluded "suspected presence or threat or any virus" and specifically expanded the exclusion to include "pandemic.").



Pandemic and Epidemic Exclusion, Hallmark, form HP PA 01 03 20 (Demonstrating Defendant Hallmark has expressly excluded "pandemic" and "epidemic" losses elsewhere but did not within the TPIP Policy). When carriers fail to use clear and distinct language to exclude a cause of loss known in the market, they "act at their own peril." *Pan American World Airways, Inc. v. Aetna Casusalty & Surety Co.* 505 F.2d 989, 1001 (2d Cir. 1974). As with the definition of *direct physical loss*, the Defendant Insurers could have included language that would have clarified any ambiguity regarding pandemic coverage, but they chose not to do so. Indeed, Defendant Insurers' choice to add the "Communicable Disease Exclusion" (discussed above) underscores the conclusion that the policy at issue does not clearly and distinctly exclude pandemics.

12

Moreover, even when not specifically excluding "pandemics," carriers regularly utilize words like *suspected, threatened,* and *fear of* to expand virus exclusions beyond actual viruses present on covered property:

---

### The various virus exclusions do not include *suspected* or *imminent* contamination

When a carrier intents to exclude *suspected* or *imminent* viral contamination, it clearly states as much:

- Liberty Mutual has previous excluded "[t]he actual or *suspected* presence or threat of any virus. . . ." See *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016));
- Arch Specialty Insurance Company's excludes "actual, *suspected, alleged or threatened* presence, discharge, dispersal, seepage, migrations, introduction, release or escape of 'Pollutants or Contaminants. . . ." (emphasis added));
- Hallmark now excludes loss "in connection with any Communicable Disease or *threat or fear* of Communicable Disease (whether actual or perceived) or the outbreak of an Epidemic or Pandemic. . . ."Pandemic and Epidemic Exclusion, Hallmark, HP-PA-01-03-20 (Excluding (emphasis added));
- The TPIP Policy now excludes "the *fear or threat* (whether actual or perceived) of a Communicable Disease." Communicable Disease Exclusion, TPIP Policy (2020-2021) (emphasis added)

57

---

Court's *Ex.* 1, The Nation's PowerPoint at 59; *see* The Nation's Reply to Hallmark at 4, fn. 5. But no applicable virus exclusions used such language here. Absent such language, the Nation has shown the various virus exclusions require proof that the COVID virus is actually on the premises to be applicable. The Nation's Motion at 13-14 (explaining *Duensing v. Traveler's Companies*, 257 Mont. 376 (1993)); *Elegant Massage, LLC.*, 2:20-CV-265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020). Except for the exclusion from Defendant Arch Specialty Insurance, [19] the Court agrees

---

[19] Defendant Arch Specialty Insurance Company's Pollution and Contamination exclusion does exclude "suspected, alleged, or threatened presence" of viruses. *Ex.* A-1 to Defendant Arch Specialty Insurance Company's Supplemental Opposition to Plaintiff's Motion for Partial Summary Judgment. But the exclusion is limited to claims "caused by, contributed to or aggravated by any *physical damage*," without reference to *physical loss.* *Id.* (emphasis added). Defendant Arch acknowledged that it incorporated the TPIP Policy as the basis for the excess policy. Defendant Insurers' Undisputed Material Fact No. 1. Consequently, and as explained above, *physical damage* and *physical loss* have distinct meanings within the TPIP Policy and thus Defendant Arch must have intended to provide coverage for physical loss.

with the Nation that the viral exclusions, by their language, only apply where there is proof of actual viral presence:

- The TPIP Policy's Pollution and Contamination exclusion requires a showing of "seepage and/or pollution and/or contamination" of a virus to be applicable;[20]
- Defendant Hallmark's Excess Policy's exclusion requires there be a showing of "dispersal, application, release of or exposure to" a virus;
- Defendant Landmark's Excess Policy's exclusion requires "discharge, dispersal, seepage, migration, release, escape or application of" a virus;
- Defendant XL's Excess Policy's exclusion requires "presence" of a virus; and,
- Defendant Liberty Mutual's Excess Policy exclusion requires the virus is "capable of inducing physical distress, illness or disease," but to be capable of inducing such an effect the virus would need to be on the premises.

Because none of these exclusions contemplate *pandemics,* or *suspected, imminent, threatened,* or *fear of* viruses—common language utilized by carriers to exclude such losses clearly and distinctively—these exclusions do not clearly and distinctly apply to the Nation's loss.[21]

Finally, Defendant Liberty Mutual asserts its loss-of-use exclusion with its excess policy bars coverage. But by the plain terms of the TPIP Policy, Defendant Liberty Mutual cannot assert that all forms of loss of use are excluded. As the Nation has shown, business interruption coverage as contemplated by the TPIP Policy necessary only results from some loss of use—*i.e.,* from some *interruption* of *business.* The Nation's Reply to Defendant Liberty Mutual Fire Insurance Company's Supplemental Opposition to the Nation's Motion at 5-6. Thus, if all loss of use was excluded, the business interruption coverage would be illusory. *Id.* For that reason, the Court accepts the proposition that when a dangerous condition like a fire, tornado, or the Pandemic causes loss of use, the exclusion would not apply. *W. Fire Ins. Co. v. First Presbyterian Church,* 165 Colo. 34, 38-39.

*     *     *

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Court **GRANTS** the Nation's First Motion for Partial Summary Judgment on Business Interruption Coverage and **DENIES** Defendant Insurers request for Summary Judgment. Pursuant to this order, the Nation is

---

[20] Moreover, the Court agrees with the Nation that the Pollution and Contamination exclusion is ambiguous because the TPIP Policy covers *all risk of direct physical loss or damage,* which meets the exception provided in the third paragraph of the exclusion. The Nation's Reply at 11-12.

[21] In its Replies, the Nation also pointed out that the Defendant Insurers' duty to investigate and prove actual presence of a virus is consistent with Oklahoma law, citing *Buzzard v. Farmers Insurance Company* to argue Defendant Insurers should have swabbed or otherwise tested the covered properties to prove the existence of a virus if it intended the various viral exclusions to apply. The Nation's Reply at 14-15, fn. 23 (*quoting* 1991 OK 127, 824 P.2d 1105, 1109 ("To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances.")). But Defendant Insurers did not do so.

14

entitled to indemnity under the terms of the TPIP Policy for the losses sustained due to the Pandemic under its business interruption coverage.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that because the Court grants the Nation's Motion finding coverage, the question of whether Civil Authority, Ingress/Egress, or any other provision of the TPIP Policy provides for coverage due to the Pandemic is hereby rendered moot. Pursuant to 12 O.S. § 952(b)(3), this Court certifies that this order substantially affects a substantial part of the merits of the controversy and an immediate appeal of this issue would materially advance the ultimate termination of this litigation.

Now, on this 2*O* day of *Jan*, 2021,
IT IS SO ORDERED!

Douglas Kirkley, District Judge
15th Judicial District of Oklahoma

15

# Exhibit F

*Goodwill Indus. of Orange Cnty., Cal. v. Philadelphia Indem. Ins. Co.,*
No. 30-2020-01169032-CU-IC-CXC (Cal. Sup. Ct. Jan. 28, 2021)

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 01/28/2021                    TIME: 02:00:00 PM          DEPT:  CX102

JUDICIAL OFFICER PRESIDING: Peter Wilson
CLERK: Virginia Harting
REPORTER/ERM: Lisa Suzanne Rouly CSR# 9524
BAILIFF/COURT ATTENDANT: Raquel Wangsness

CASE NO: **30-2020-01169032-CU-IC-CXC**   CASE INIT.DATE: 11/06/2020
CASE TITLE: **Goodwill Industries of Orange County, California vs. Philadelphia Indemnity Insurance Company**
CASE CATEGORY: Civil - Unlimited     CASE TYPE: Insurance Coverage

---

EVENT ID/DOCUMENT ID: 73432648

**EVENT TYPE:** Demurrer to Complaint
MOVING PARTY: Philadelphia Indemnity Insurance Company
CAUSAL DOCUMENT/DATE FILED: Demurrer to Complaint, 12/23/2020

---

EVENT ID/DOCUMENT ID: 73450761
**EVENT TYPE:** Status Conference

---

**APPEARANCES**

---

Appearances noted by way of CourtCall Appearance Calendar, attached hereto and incorporated herein by reference.

Defendant Philadelphia Indemnity Insurance Company's ("Philadelphia") general demurrer to the First, Third and Fifth Causes of Action

Tentative Ruling posted on the Internet.

The Court hears oral argument and confirms the tentative ruling as follows:

Defendant Philadelphia Indemnity Insurance Company's ("Philadelphia") general demurrer to the First, Third and Fifth Causes of Action is OVERRULED. Defendant is ordered to file its answer within 10 days.

A general demurrer challenges the legal sufficiency of a complaint on the ground that it fails to state facts sufficient to constitute a cause of action. (Code Civ. Proc. § 430.10(e).) The allegations in the complaint as a whole must be reviewed to determine whether a set of alleged facts constitutes a cause of action. *(People v. Superior Court (Cahuenga's the Spot)* (2015) 234 Cal.App.4th 1360, 1376.) A complaint need only meet fact-pleading requirements, which requires a statement of facts constituting a cause of action in ordinary and concise language, and should allege ultimate facts that, as a whole, apprise defendant of the factual basis of the claim. (Code Civ. Proc. §425.10(a)(1); *Navarrete v. Meyer* (2015) 237 Cal.App.4th 1276, 1284.)

---

CASE TITLE: Goodwill Industries of Orange County,     CASE NO: **30-2020-01169032-CU-IC-CXC**
California vs. Philadelphia Indemnity Insurance Compan

In ruling on a demurrer, the court is guided by the following long-settled rules: The court treats the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. The court may also consider matters which may be judicially noticed. Further, the court gives the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

In a demurrer based on insurance policy language, the insurer "must establish conclusively that this language unambiguously negates beyond reasonable controversy the construction alleged in the body of the complaint." (*Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 468–473, 282 Cal.Rptr. 389.) To meet this burden, an insurer is required to demonstrate that the policy language supporting its position is so clear that parol evidence would be inadmissible to refute it. (*Id.* at p. 469, 282 Cal.Rptr. 389.) Absent this showing, the court must overrule the demurrer and permit the parties to litigate the issue in a context that permits the development and presentation of a factual record, e.g., summary judgment or trial." (*Palacin v. Allstate Ins. Co.* (2004) 119 Cal. App. 4th 855, 862.)

Philadelphia demurrers to the 1st, 3rd and 5th causes of action on the ground that Plaintiff has not alleged sufficient facts to show "direct physical loss" under the Business Income and Extra Expenses and Civil Authority provisions in its insurance policy because coronavirus and COVID-19 do not physically alter the structure. In response Plaintiff contends (a) that "direct physical loss" does not require physical tangible alteration of the property and that allegations of loss of use are sufficient, and (b) that if physical tangible alteration is required, Plaintiff has satisfied this requirement.

Whether Plaintiff has alleged sufficient facts to overcome Philadelphia's demurrer depends on the interpretation of "direct physical loss". The interpretation of an insurance policy is a question of law and applies the well-settled rules of contract interpretation. (*Waller v. Truck Ins. Exch.* (1995) 11 Cal. 4th 1, 18; *Vardanyan v. AMCO Ins. Co*. (2015) 243 Cal. App. 4th 779, 792.)

"The mutual intention of the parties as it existed at the time of contracting governs interpretation. (Civ. Code, § 1636.) " 'Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation.' " (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619.) " 'Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations.' " (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763, 110 Cal.Rptr.2d 844, 28 P.3d 889.) Policy exclusions are strictly construed; exceptions to exclusions are broadly construed in favor of the insured. (*E.M.M.I.*, at p. 471, 9 Cal.Rptr.3d 701, 84 P.3d 385.)

(*Vardanyan v. AMCO Ins. Co*., *supra*, 243 Cal. App. 4th at 792.)

In *MRI Healthcare Center of Glendale v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766 ("*MRI Healthcare*"), on cross-motions for summary judgment, the court considered whether plaintiff insured suffered "direct physical loss" to an MRI (magnetic resonance imaging) machine within the meaning of a business insurance policy. (*Id.* at 769–770, 777–778.) The *MRI Healthcare* court stated: "A direct physical loss **an actual change in insured property** then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.' [Citation.] ... **For loss to be covered, there must be a 'distinct, demonstrable, physical alteration' of the property."** (*Id.* at 779, emphasis added.) The *MRI Healthcare* court further explained: "For there to be a 'loss' within the meaning of the policy, some **external force** must have acted upon the insured property to cause a **physical change in the condition of the property**, i.e., it must have been 'damaged' within the common understanding of that term." (*Id.* at 780, emphasis added.) Thus, the MRI machine did not suffer any "actual physical 'damage' " by virtue of the fact that it was turned off and could not be turned back

---

CASE TITLE: Goodwill Industries of Orange County,          CASE NO: **30-2020-01169032-CU-IC-CXC**
California vs. Philadelphia Indemnity Insurance Compan

on. (*Ibid*.)

Neither party has cited to any California state cases that have resolved the question whether coronavirus or COVID-19 may cause "direct physical loss" to property.

Here, the Complaint expressly alleges the coronavirus and COVID-19 caused direct physical loss and damages to its property. The Complaint makes the following specific factual allegations: coronavirus and COVID-19 are contained in respiratory droplets called aerosols that stay on surfaces and in the air for up to a month, physically alters the air and surfaces to which it attaches and causes them to be unsafe, deadly and dangerous (Complaint, at ¶¶2, 20, 22-26); that "[r]ecognizing the ability of the coronavirus to attach onto surfaces," researchers have begun to develop technology to test for the presence of COVID-19 on the surfaces of buildings (Complaint, at ¶21); and that coronavirus and COVID-19 were present at its properties at the time of the State and County closure orders, that when Plaintiff reopened its properties, its employees tested positive, and that it was required to conduct "additional cleaning and sanitization to respond to and remove the coronavirus and COVID-19 from physical surfaces in its insured premises and properties in accordance with public health orders that require such measures to protect against the coronavirus and COVID-19 (Complaint, at ¶¶42-44).

Construing these allegations as true as the Court must on a demurrer, the Court cannot determine as a matter of law that these allegations do not show a "direct physical loss" in accordance with *MRI Healthcare*. (See *Studio 417, Inc. v. Cincinnati Insurance Company* (W.E. Mo. August 12, 2020, Case No. 20-cv-03127-SRB) ___ F. Supp.3d ___, 2020 WL 4692385, 4-5 [plaintiff adequately plead a claim for "direct physical loss" by alleging COVID-19 is a physical substance that lives on surfaces and in the air making its property unsafe and unusable and resulting in direct physical loss].)

The Court recognizes that California federal cases have interpreted *MRI Healthcare* to require a physical change in the property or permanent dispossession of the property to qualify as "direct physical loss" and have generally rejected arguments that business losses due to coronavirus and Covid-19 are covered under Business Income, Extra Expenses and Civil Authority provisions. See Amended Mem. Supp., at pp. 12 -14. However, these federal California cases are not binding on this Court and were decided under a different standard. While these cases are instructive, the allegations in those cases are largely distinguishable from those alleged here. (See e.g, *10E, LLC v. Travelers Indemnity Co. of Connecticut* (C.D. Cal. September 2, 2020, Case No. 2:20-cv-04418-SVW-AS) ___ F.Supp.2d ___, 2020 WL 5359653, 1, 5 [no allegations of physical alteration]; *Mudpie, Inc. v. Travelers Casualty Ins. Co. of America* (N.D. Cal. September 14, 2020) 2020 WL 5525171, *1, 4-5 [no allegations of any external physical force that induced detrimental change; *West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Insurance Companies* (C.D. Cal. October 27, 2020, Case No. 2:20-cv-05663-VAP-DFMx) ___ F. Supp.3d ___, 2020 WL 6440037 *4-5 [no allegations of physical transformation or requiring that anything needed to be repaired, rebuilt or replaced]; *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.* (S.D. Cal. September 11, 2020, Case No. 20-cv-907-CAB-BLM) 2020 WL 5500221, *1,5 [no factual allegations to support arguments of physical damages].)

More importantly, given the high standard that must be met to prevail on a demurrer on an insurance policy, any doubts must be resolved in favor of the Plaintiff. The Court is not satisfied that there is a sufficiently full record at this demurrer stage to make the determination as a matter of law that the coronavirus and COVID-19 have not, in some manner, caused physical damage to property.

Accordingly, the demurrer is overruled.

The Court overrules Plaintiff's objections to Exhibits B -G and grants Philadelphia's request for judicial notice.

Status Conference

CASE TITLE: Goodwill Industries of Orange County,          CASE NO: **30-2020-01169032-CU-IC-CXC**
California vs. Philadelphia Indemnity Insurance

Status Conference continued to April 2, 2021 at 9 AM in this department pursuant to Court's motion.

The parties are ordered to file a joint status report not later than March 26, 2021.

Moving Party is ordered to give notice.

# CourtCall® Appearance Calendar

**January 2021**

**28** Thursday

*CX102Video* **Judge Peter Wilson (Video Only)**

***Orange County Superior Court-Santa Ana***

**02:00 PM PT**    **Dial:**   **(855) 268-7844**    **Code:**  8191402#    **PIN:**   0135149

| Time | Case Information | | Attorney Information | |
|------|------------------|---|---------------------|---|
| | **Case #: 04-2020-01169032**<br>**Case Name:**<br>Goodwill Industries of Orange County Cali. vs. Philadelphia Indemnity Insurance Co.<br>**Proceeding Type:**<br>Court Approved Video Hearing | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | Dentons US, LLP<br>(213) 623-9300 ext.<br>Ronald D. Kent<br>Defendant(s), Philadelphia Indemnity Insurance Co<br>11061256 |
| | | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | Dentons US, LLP<br>(312) 876-3156 ext.<br>April Elkovitch<br>Defendant(s), Philadelphia Indemnity Insurance Co<br>11062184 |
| | | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | Dentons US, LLP<br>(312) 876-3156 ext.<br>Jeffrey Zachman<br>Defendant(s), Philadelphia Indemnity Insurance Co.<br>11051155 |
| | | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | Dentons US, LLP<br>(312) 876-3156 ext.<br>John Kirby<br>Defendant(s), Philadelphia Indemnity Insurance Co.<br>11062176 |
| | | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | Denton US, LLP - St. Louis<br>(314) 259-5807 ext.<br>Richard Fenton<br>Defendant(s), Philadelphia Indemnity Insurance Co.<br>11051154 |
| | | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | Dentons US, LLP<br>(949) 732-3700 ext.<br>Justin Martin<br>Defendant(s), Philadelphia Indemnity Insurance Co.<br>11051153 |

Crystal Castillo ext. 867

# CourtCall® Appearance Calendar

**January 2021**                                        Same Day   Jan 28 2021 12:22PM

**28** Thursday

*CX102* **Judge Peter Wilson (VC)**

***Orange County Superior Court-Santa Ana***

**02:00 PM PT**

| Time | Case Information | Attorney Information |
|------|-----------------|---------------------|

**Case #: 04-2020-01169032**
**Case Name:**
Goodwill Industries of Orange County Cali. vs.
Philadelphia Indemnity Insurance Co.
**Proceeding Type:**
Status Conference

| | |
|---|---|
| Firm: | Robins Kaplan LLP |
| Phone: | (310) 229-5405 ext. |
| Contact: | Sean R. O'Connor |
| For: | Defendant(s), Certain Underwriters at Lloyd's |
| CCID: | 11013053 |

| | |
|---|---|
| Firm: | Robins Kaplan LLP |
| Phone: | (310) 552-0130 ext. 5881 |
| Contact: | Amy Churan |
| For: | Defendant(s), Def. Certain Underwriters at Lloyd's |
| CCID: | 11012869 |

| | |
|---|---|
| Firm: | Covington & Burling LLP |
| Phone: | (415) 591-6016 ext. |
| Contact: | Joan  Li |
| For: | Plaintiff(s), Goodwill Industries of Orange County, California |
| CCID: | 11039047 |

| | |
|---|---|
| Firm: | Cheri Violette-Makino, CSR, Inc. |
| Phone: | (562) 225-3431 ext. |
| Contact: | Cheri Violette-Makino - 3584 |
| For: | Court Reporter, Cheri Violette-Makino |
| CCID: | 11037955 |

| | |
|---|---|
| Firm: | Covington & Burling LLP |
| Phone: | (650) 632-4727 ext. |
| Contact: | Rani Gupta |
| For: | Plaintiff(s), Goodwill Industries of Orange County Ca. |
| CCID: | 11037941 |

| | |
|---|---|
| Firm: | Unrouly Reporting Inc. |
| Phone: | (714) 319-1139 ext. |
| Contact: | Lisa Rouly |
| For: | Court Reporter, Lisa Rouly |
| CCID: | 11072109 |

Crystal Castillo ext. 867